In the Matter of Harold F. YOUNGER, Debtor.

Bankruptcy No. 92–40607.

United States Bankruptcy Court,
S.D. Georgia,
Savannah Div.

June 16, 1993.

Paul G. Justice, Asst. U.S. Atty., Savannah, GA, for plaintiff/movant.

Mark Bulovic and C. James McCallar, Jr., Savannah, GA, for defendant/respondent.

John M. Tatum, Savannah, GA, for objecting creditor.

*ORDER ON MOTION OF UNITED STATES OF AMERICA FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE*

LAMAR W. DAVIS, Jr., Chief Judge.

This case presents a question of first impression of immense difficulty. Debtor is before this court as a result of an involuntary proceeding filed by his ex-wife, Donna Younger. She claims that Debtor is obligated to her as a result of a divorce decree in the amount of $912,635.00 (*see* proof of claim filed 10/20/92). Debtor allegedly violated the terms of a Superior Court injunction against transferring any property following the divorce which led to the filing of this case whereby the ex-wife sought to preserve and collect his assets and subject them to creditors' claims. Debtor could not be served personally at the outset of the case and service by publication was ordered. He subsequently obtained actual notice of the pendency of this case but failed to answer the involuntary petition which led to entry of an order for relief. *See Matter of Younger,* Chapter 7 Case No. 92–40607, Adv. No. 92–4156, 1993 WL 645501, slip op. at 9 (Bankr. S.D.Ga. May 13, 1993). On April 28, 1992, this court issued an order requiring Debtor to attend a Rule 2004 examination. Debtor did not respond to the order. The Debtor also failed to respond to the court's order of May 26, 1992, requiring a schedule of assets and liabilities to be filed with the court. Subsequently, Mrs. Younger, having difficulty tracing Debtor's assets, petitioned the court to issue an order for Mr. Younger's apprehension in order to compel his attendance at the 2004 examination. *See* Order signed by United States District Court Judge John F. Nangle directing Debtor's apprehension filed June 16, 1992, and attached as Government's Exhibit "I" to the Application for Allowance of Administrative Expenses and Assessment of Fees. Debtor was

mailed, on or about May 31, 1992, a notice of commencement of bankruptcy case listing the required meeting of creditors as June 22, 1992. Debtor received actual notice of the bankruptcy proceedings, and nevertheless failed to appear at the creditors' meeting scheduled in June. *See generally Matter of Younger, supra,* slip op. at 7–9. Debtor was arrested on or about June 25, 1992, when a United States Magistrate Judge in Jacksonville, Florida, issued an order requiring the United States Marshal to return Debtor to Savannah. *See* Exhibit "J" to the Government's Application.

Debtor was brought to this jurisdiction and attended a Rule 2004 examination on June 27, 1992. However, he refused to answer any questions concerning his estate citing his privilege against self incrimination. Thereafter, Mrs. Younger sought and obtained a determination that granted Debtor immunity from prosecution pursuant to 11 U.S.C. Section 344. He was thereafter ordered to respond and continued to refuse. He remained incarcerated during the period of his refusal to testify. Ultimately, he was cited for contempt for his failure and refusal to testify after the grant of immunity, found by the United States District Court to be in contempt, and incarcerated. *See* Exhibit "K" Plaintiff's Brief in Response to Motion to Dismiss Adversary Proceeding No. 92–4156. He remains in federal custody despite repeated advice that he would be released in the event his testimony was given as ordered.

At some point in this long process Debtor became ill and was hospitalized with heart problems. He underwent surgery while in the custody of the United States Marshals Service pursuant to the Bankruptcy Rule 2005 order. Later he developed gall bladder problems and surgery was performed to correct that problem as well.

The claim asserted by the United States Marshals Service in this proceeding is for repayment of the expenses incurred for Debtor's arrest, custody, and medical treatment while in custody. The Service seeks allowance of its claim in the amount of $111,854.45 for these expenses as a claim entitled to administrative priority pursuant to 11 U.S.C. Section 503(b)(1)(A) which provides in relevant part:

> (b) After notice and a hearing, there shall be allowed administrative expenses ... including—
>
> (1)(A) the actual, necessary costs and expenses of preserving the estate....

The United States contends that all the expenses incurred are actual and necessary costs to preserve the estate under these facts where a contemptuous debtor who has concealed evidence concerning his assets has forced a creditor to invoke the most coercive methods available to force debtor to comply with the dictates of federal law. But for the order to incarcerate Debtor he clearly would never have made an appearance or voluntarily complied with any legal obligations related to this case. But for his incarceration Debtor would have been free to secrete himself and freely transfer and conceal his assets. During the pendency of this case nearly $400,000.00 of Debtor's assets have, in fact, been obtained by and are presently held by the Trustee. On these facts the United States argues that administrative expense priority is warranted as these costs were necessary to preserve the estate or alternatively, to the extent that no specific benefit can be shown, are allowable under Eleventh Circuit authority which accords priority to certain post-petition expenses not expressly listed in Section 503.

Mrs. Younger contends that, as to all or most of the expenses and particularly the medical expenses, they are post-petition expenses that benefit the Debtor personally and not the estate and should be classified as post-petition debts incurred by Debtor that will not be discharged. Obviously, allowance of these expenses will deplete the estate presently worth $400,000.00 from which Mrs. Younger can be paid by an additional $111,854.45. Since her claim alone exceeds $900,000.00 she cannot be paid in full from funds in the Trustee's hands—thus, any allowance of administrative expense for these items reduces dollar for dollar her ultimate recovery.[1]

---

1. In actuality it is unknown whether Debtor has any other creditors since he has never filed

The perversity of this case is that in truth neither Mrs. Younger nor the United States should be penalized for the costs arising out of Debtor's conduct which is so contemptuous and reprehensible to be beyond words. Unfortunately, however, that cost must be borne by one or the other of them unless and until additional assets are recovered or post-bankruptcy collection efforts succeed where bankruptcy law has failed. The parties agree that this is a case of first impression on which neither side has found controlling authority. Thus, there is no precedent either for allowing or denying the relief sought.

In making this determination it is clear that the allowance of such claims is an area where the court is accorded broad discretion. *See In re Butcher,* 108 B.R. 634, 636 (E.D.Tenn.1989). Clearly an expense such as this is not expressly enumerated in the statute. However, "the use of the word 'including' as the last word in the lead-in sentence of Section 503(b) ... is not limiting. A court might well conclude that there are to be allowed as administrative expense claims not necessarily precisely covered by the provisions of Section 503(b)." *Collier* at 503–17. The Eleventh Circuit has cited *Collier* with approval and held that the express items listed in Section 503 are not limiting. As *Collier* notes, the Code makes no attempt

> to enumerate specifically all of the potential items of expense which could constitute "the actual, necessary costs and expenses of preserving the estate".....

3 L. King, *Collier on Bankruptcy,* ¶ 503.-04[1][a][i] at 503–19 (15th Ed.1991).

The latest interpretation of Section 503(b) of the Bankruptcy Code by the Eleventh Circuit is found in *In re N.P. Mining Co., Inc.,* 963 F.2d 1449 (11th Cir.1992). The precise issue before the court was whether and for how long post-petition, punitive, non-tax penalties can be accorded administrative expense status under Section 503(b). Recognizing the federal policy of requiring trustees to operate an estate in compliance with state law, the court held that punitive, civil penal-

ties assessed post-petition against a Chapter 11 debtor as punishment for environmental violations qualified as administrative expenses to the extent they were incurred as consequences of mining operations while debtor's strip mining business was still operating. *Id.* at 1453.

In reaching its holding, the Eleventh Circuit emphasized the inclusive nature of the language in Section 503(b):

> The legislative history of Section 503(b), as well as the legislative history of other relevant sections of the Bankruptcy Code, is silent regarding the treatment of punitive postpetition penalties. It is clear from the face of the statute, however, that expenses not explicitly listed in Section 503(b) can receive administrative-expense status in one of two ways, either as a nonlisted "actual, necessary" expense of preserving the estate under 503(b)(1)(A) or as a nonlisted administrative expense under 503(b) in general. Either way, there is room in the statute for courts to accord administrative-expense priority to postpetition expenses, and courts have given this status to certain categories of postpetition claims that are not explicitly listed in the statute.

963 F.2d at 1452. *See also In re Allied Mechanical Services, Inc.,* 885 F.2d 837 (11th Cir.1989) (where the court held that, notwithstanding the legislative silence under Section 503(b), the United States was entitled to administrative expense priority on its claim in Chapter 7 liquidation for interest accrued on tax liability incurred while debtor was operating under Chapter 11 reorganization).

In *N.P. Mining, supra,* the Eleventh Circuit rejected a narrow interpretation of Section 503(b)(1)(A) and expressly found that administrative expenses could be awarded based upon other policy considerations, without a specific finding that there was a measurable benefit to the estate. *N.P. Mining,* 963 F.2d at 1454. In doing so the court allowed as administrative expenses punitive civil fines for environmental violations inci-

schedules or testified concerning his financial affairs. *See* Transcript of Examination of Debtor filed July 17, 1992. If, in fact, there are other creditors Mrs. Younger's share of the estate would be diluted and allowance of this or any

other administrative expense would reduce her ultimate recovery pro-rata rather than dollar-for-dollar. For purposes of this order reference to Mrs. Younger shall be deemed to include other creditors who are hereafter identified.

dent to the operation of a business above and beyond any clean up costs and in the absence of any proof that any of the violations constituted a health hazard or imminent risk to public safety.

While Mrs. Younger's counsel argues that the outcome in *N.P. Mining* turned on the fact that the fines were incidental to the operation of a business, and therefore is not controlling, I find the rationale of *N.P. Mining* to be broader. The court recognized that policies other than benefit to or preservation of the estate operate to confer administrative expense priority. It found Congress' intent to be that "first priority claims include claims other than those that serve to preserve the bankruptcy estate." *Id.* at 1456. Because of the policy established in 28 U.S.C. Section 959(b) the Eleventh Circuit ruled that the fines were allowable administrative expenses even though the result would be to deplete the estate.

I conclude that the expenses at issue are entitled to administrative expense priority for two reasons: First, I find the expenses and costs were necessary and have served to preserve the estate. By his conduct Debtor clearly could be expected to conceal and transfer assets. His incarceration, after refusal to abide by the Code requirements for disclosure and specific court orders to testify, guarantees his inability to conceal himself and substantially restricts his ability to transfer or conceal his assets. Absent his incarceration it is obvious that Debtor would have engaged in conduct that would dissipate the estate. While the monetary benefit may be incapable of exact quantification the existence of benefit is undeniable. Certainly this creditor expected that a benefit would accrue from the actions taken in her behalf and should not now be heard to complain that the benefits are "hypothetical and highly speculative" particularly when she could at any time prior to the adjudication that Debtor was in contempt have moved the court to release Debtor. *See* page 5 of Mrs. Younger's Brief

filed May 18, 1993. Having failed to do so, and thus continued the accrual of these expenses it is highly inconsistent to complain of "purported benefits" of the expenses incurred by the Marshals Service.

Second, even if necessity to preservation of the estate is in question I find that the ultimate power to incarcerate a debtor under Bankruptcy Rule 2005 for the purpose of guaranteeing his appearance at a Bankruptcy Rule 2004 examination and thereafter to attempt to coerce his compliance with federal law is of such critical importance to the viability of the bankruptcy process that the costs incident to that incarceration are no less deserving of priority classification than the costs incident to operating a business. *See generally Reading Co. v. Brown,* 391 U.S. 471, 483–86, 88 S.Ct. 1759, 1766–67, 20 L.Ed.2d 751 (1968). These expenses should not be borne by the United States. It incurred these expenses not as a volunteer but as the result of a court order sought by a private litigant, a creditor who expected or hoped to reap a benefit from utilizing the procedure. However, these expenses should not be borne by a petitioning creditor alone but by the creditors as a group for whose benefit the estate is administered.[2]

Finally, the expenses are not subject to disallowance as unnecessary. Contrary to the assertions of Mrs. Younger's counsel that they were incurred for the "personal well-being of the debtor" I find that they were not incurred principally for that reason. Instead, medical services were rendered pursuant to the government's responsibility toward individuals in custody to provide necessary medical care[3] and pursuant to the creditors' desire to continue, even after Debtor's health condition was known, to maintain Debtor in custody as a tool to secure his cooperation. That Debtor may incidentally have benefitted does not alter the fact that the motivation for the incarceration was not altruistic on the creditors' or the Marshals Service part.

---

**2.** While in practice Mrs. Younger, as the largest creditor, may bear the brunt of this expense it is because of her status as a creditor not because she initiated the action.

**3.** *See DeShaney v. Winnebago ˙County Dept. of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).

For the foregoing reasons, I hold that the expenses incurred by the United States Marshals Service in the amount of $111,854.45 are allowed and entitled to administrative expense priority pursuant to 11 U.S.C. Section 503(b)(1)(A).