**In the Matter of Harold F. YOUNGER, Debtor.**

**Donna E. YOUNGER, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. CV 493–181.**

United States District Court,
S.D. Georgia,
Savannah Division.

April 15, 1994.

966

James Luther Drake, Jr., Karsman, Brooks & Callaway, John Milton Tatum, Robert Alvin Lewallen, Jr., Miller, Simpson & Tatum, Savannah, GA, for appellant Donna E. Younger.

Edmund Alexander Booth, Jr., Augusta, GA, and Paul Gregory Justice, Asst. U.S. Atty., Savannah, GA, for appellee U.S.

Robert L. Coley, Savannah, GA, Asst. U.S. Trustee.

James Luther Drake, Jr., Karsman, Brooks & Callaway, Savannah, GA.

## ORDER

EDENFIELD, Chief Judge.

Appellee United States of America (United States) filed an application for administrative expenses seeking compensation of expenses incurred by the United States Marshals Service (Marshals Service) due to the incarceration and subsequent need for medical treatment of the debtor, Harold F. Younger (Mr. Younger). Donna E. Younger (Mrs. Younger), Mr. Younger's former wife and primary creditor, opposed recovery of these expenses on the ground that they were personal to the debtor and not beneficial to the estate. By order dated June 16, 1993, the bankruptcy court held that the expenses were entitled to administrative expense priority. *See Matter of Younger*, 163 B.R. 609 (Bankr.S.D.Ga. 1993). This appeal by Mrs. Younger ensued.

## BACKGROUND

As part of the civil divorce action instituted by Mrs. Younger against Mr. Younger, the Superior Court of Chatham County entered a judgment of $912,635.00 on January 10, 1992, against Mr. Younger to restore Mrs. Younger's non-marital property. Mr. Younger exhausted all appellate remedies on March 12, 1992. Between March 13 and March 18, 1992, Mr. Younger transferred substantial amounts of money from local brokerage firms to out-of-town banks; he later withdrew the money from these banks and dispersed it by cashier's checks payable to relatives and friends who claimed no interest in the money. On March 18, 1992, Mrs. Younger discovered that Mr. Younger's residence telephone had been disconnected and that all furniture had been removed from his apartment. She was later informed that Mr. Younger had moved from the apartment approximately two weeks earlier.

On March 27, 1992, Mrs. Younger filed an involuntary Chapter 7 petition against Mr. Younger. Mr. Younger could not be personally served, and the bankruptcy court ordered service by publication. In response to Mrs. Younger's motion, the bankruptcy court entered an order on April 28, 1992, requiring Mr. Younger to submit to an examination pursuant to Bankr.R. 2004 on May 5, 1992. Mr. Younger failed to appear at this examination. He also failed to file a statement of financial affairs and a schedule of assets and liabilities due on June 10, 1992, under a court order.

On June 11, 1992, Mrs. Younger moved the bankruptcy court for an order directing the Marshals Service to bring Mr. Younger before the court without unnecessary delay for the purpose of a hearing under Bankr.R.

2005(a).[1] The bankruptcy court referred this matter to the undersigned judge to determine whether the relief sought should be considered by that court or this court. On June 12, 1992, this Court withdrew the reference for the limited purpose of considering Mrs. Younger's motion. The Honorable John F. Nangle, United States District Judge, granted Mrs. Younger's motion on June 16, 1992, and ordered the United States Marshal of any district in which Mr. Younger may be found to apprehend him to insure his appearance for the Rule 2004 examination. The Marshals Service apprehended Mr. Younger on June 25, 1992, and ordered his transfer to this district.

The Honorable G.R. Smith, United States Magistrate Judge, ordered Mr. Younger to submit to a Rule 2004 examination. During the June 27, 1992, examination, Mr. Younger invoked his Fifth Amendment privilege against self-incrimination. Although this Court and the Superior Court of Chatham County subsequently granted Mr. Younger immunity from prosecution, Mr. Younger continued to refuse to testify at a Rule 2004 examination. While he was incarcerated for refusal to testify, Mr. Younger was hospitalized and underwent surgery for a heart condition and gall bladder problems. On November 20, 1992, this Court found Mr. Younger in contempt of court for his continued refusal to testify.[2] As a result of Mr. Younger's incarceration, hospitalization, and surgeries, the Marshals Service incurred expenses totalling $111,854.45. The bulk of these expenses went toward paying Mr. Younger's medical care.

On October 2, 1992, and on April 5, 1993, the United States filed applications for allowance of these expenses. Despite Mrs. Younger's objections that the expenses were incurred for the personal benefit of the debtor, the bankruptcy court found that these expenses were entitled to administrative priority for two reasons: They preserved the estate, and they continued the viability of the bankruptcy process by allowing incarceration of a debtor to coerce his compliance with federal law.

## DISCUSSION

Mrs. Younger contends that the bankruptcy court erroneously found that administrative expenses under 11 U.S.C. § 503(b) include the costs incurred in executing an order to bring a debtor before the court, in holding a debtor in custody as ordered by the court pending completion of a Rule 2004 examination, and in providing medical services to an incarcerated debtor. She claims that the health care expenses are Mr. Younger's personal living expenses, not those of the estate; that these expenses do not confer a benefit to the estate; and that the costs should not be treated as an unlisted expense under section 503. The United States counters that Mr. Younger's incarceration prevents him from further concealing the property of the estate and that the Marshals Service has a constitutional obligation to provide reasonable medical care to incarcerated persons. As noted by the bankruptcy court and the parties, this case presents a question of first impression.

In evaluating these claims, the Court reviews the bankruptcy court's findings of fact under the clearly erroneous stan-

---

1. That section provides as follows:

   On motion of any party in interest supported by an affidavit alleging (1) that the examination of the debtor is necessary for the proper administration of the estate and that there is reasonable cause to believe that the debtor is about to leave or has left the debtor's residence or principal place of business to avoid examination, or (2) that the debtor has evaded service of a subpoena or of an order to attend for examination, or (3) that the debtor has willfully disobeyed a subpoena or order to attend for examination, duly served, the court may issue to the marshal ... an order directing the officer to bring the debtor before the court with-

   out unnecessary delay. If, after hearing, the court finds the allegations to be true, the court shall thereupon cause the debtor to be examined forthwith. If necessary, the court shall fix conditions for further examination and for the debtor's obedience to all orders made in reference thereto.
   Bankr.R. 2005(a).

2. Although this Court ordered Mr. Younger incarcerated indefinitely, the Eleventh Circuit found that 28 U.S.C. § 1826 required his release at the end of the court proceeding or eighteen months, whichever is less. *Matter of Younger*, 986 F.2d 1376 (11th Cir.1993).

dard, and reviews the bankruptcy court's conclusions of law de novo. *Equitable Life Assurance Soc'y v. Sublett (In re Sublett),* 895 F.2d 1381 (11th Cir.1990). The bankruptcy court, however, has broad discretion in applying section 503(b). *Sapir v. C.P.Q. Colorchrome Corp. (In re Photo Promotion Assocs., Inc.),* 881 F.2d 6 (2d Cir.1989); *accord Burlington N.R.R. Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.),* 853 F.2d 700 (9th Cir.1988).

### Section 503(b) generally

■ The applicable statute provides in pertinent part as follows:

(b) After notice and a hearing, there shall be allowed, administrative expenses ..., including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case ...

11 U.S.C.A. § 503(b)(1)(A) (1993). Although certain types of administrative expenses are listed in the statute, the designations contained in section 503(b) are not exhaustive since use of the word "including" in the statute is not limiting. 11 U.S.C. § 102(3) (1993); *accord United States v. Crenshaw (In re Allied Mechanical Servs., Inc.),* 885 F.2d 837 (11th Cir.1989). Expenses not explicitly listed in the statute can receive administrative expense status in one of two ways: as a nonlisted "actual, necessary" expense of preserving the estate under section 503(b)(1)(A) or as a nonlisted administrative expense under section 503(b) in general. *Alabama Surface Mining Comm'n v. N.P. Mining Co., Inc. (In re N.P. Mining Co., Inc.),* 963 F.2d 1449 (11th Cir.1992); *see generally* 3 L. King, Collier on Bankruptcy ¶ 503.03 (15th ed. 1993).

In *N.P. Mining,* the Eleventh Circuit examined whether punitive civil penalties assessed by the state for postpetition strip mining qualified as an administrative expense

in a Chapter 11 case. The court first noted the interpretation of section 503(b)(1)(A) given by other courts: "Any claim for administrative expenses and costs must be the actual and necessary costs of *preserving the estate for the benefit of its creditors.*" *N.P. Mining,* 963 F.2d at 1454 (*quoting Dant & Russell,* 853 F.2d at 706) (emphasis added).[3] It then noted that this restrictive interpretation ignored policies involved in section 503(b) and that the Supreme Court had not construed the section narrowly. *Id.* at 1454. It quoted the following passage from *Reading Co. v. Brown,* 391 U.S. 471, 483–84, 88 S.Ct. 1759, 1766, 20 L.Ed.2d 751 (1968) (emphasis added):

... "[A]ctual and necessary costs" should include *costs ordinarily incident to operation of a business,* and not be limited to costs without which rehabilitation would be impossible ... In *some cases* arising under Chapter XI it has been recognized that "actual and necessary costs" are not limited to those claims which the business must be able to pay in full if it is to be able to deal at all.

*Id.* Since only "some cases" in which costs ordinarily incident to operation of a business are afforded administrative expense priority, the Eleventh Circuit found that a policy of ensuring compliance by trustees with state law served as sufficient justification for affording punitive civil penalties administrative expense priority as nonlisted "actual, necessary costs and expenses of preserving the estate" under section 503(b)(1)(A). *Id.* at 1458–59. This result accrued even though the expenses conferred no actual benefit upon the estate. *Id.* at 1454.

After discussing *N.P. Mining,* the bankruptcy court concluded that the expenses and costs at issue were entitled to administrative expense priority for two reasons. First, the expenses and costs were necessary and served to preserve the estate in that Mr. Younger's incarceration halted his dissipation of the estate. Second, even if Mr. Younger's incarceration was not necessary to preserve

---

**3.** An earlier Eleventh Circuit case discussing section 503(b) held that "there must be an actual, concrete benefit to the estate before a claim is allowable as an administrative expense." *Broadcast Corp. of Georgia v. Broadfoot (In re Subscrip-* *tion Television of Greater Atlanta),* 789 F.2d 1530, 1532 (11th Cir.1986) (citation omitted) (discussing administrative expense priority of an executory contract).

the estate, "the ultimate power to incarcerate a debtor under Bankruptcy Rule 2005 for the purpose of guaranteeing his appearance at a Bankruptcy Rule 2004 examination and thereafter to attempt to coerce his compliance with federal law is of such critical importance to the viability of the bankruptcy process that the costs incident to that incarceration are no less deserving of priority classification than the costs incident to operating a business." *Younger,* 163 B.R. at 612. The bankruptcy court also held that the allowances were not subject to disallowance as unnecessary, rejecting Mrs. Younger's argument that the expenses were incurred for the personal well-being of Mr. Younger.

### *Treatment as an actual and necessary expense*

■ As noted above, the bankruptcy court found that the expenses incurred by the Marshals Service were necessary to preserve the estate and had served to protect the estate. Mr. Younger's incarceration "guarantee[d] his inability to conceal himself and substantially restrict[ed] his ability to transfer or conceal his assets." *Id.* On appeal, Mrs. Younger maintains that the costs of detaining Mr. Younger conferred no benefit upon the estate because the Marshals Service has not actively attempted to locate assets for the estate and that Mr. Younger's continued refusal to submit to a Rule 2004 examination has resulted in no additional information to the estate.

Mrs. Younger's arguments fail to address the bankruptcy court's finding that Mr. Younger's incarceration *prevented* him from further dissipating or concealing property of the estate. Mrs. Younger briefly addresses this holding in her argument that costs of medical care should not be treated as an administrative expense. Br. of Appellant, p. 13. She states that "[t]his rationale may purport to explain the expenses for the actual detention of [Mr. Younger] but it is impossible to conceive how, if at all, the provision of medical care to the Debtor prevented him from concealing assets." *Id.* Even if Mr. Younger's incarceration has not resulted in his willingness to testify at a Rule 2004 examination, his arrest and incarceration have conferred an actual and necessary benefit on his estate: Mr. Younger's ability to transfer or hide his assets, the event precipitating the involuntary petition filed by Mrs. Younger, has been limited by his incarceration. In fact, during the pendency of this matter, nearly $400,000.00 of Mr. Younger's assets have been obtained by the Trustee. *Younger,* 163 B.R. at 610.

In sum, incarceration of Mr. Younger conferred an "actual, concrete benefit" upon the estate by allowing the recovery of $400,-000.00 and served to preserve the estate by precluding Mr. Younger from further transfers to dissipate the estate. Although Mr. Younger ultimately did not testify at a Rule 2004 examination, his incarceration secured his attendance at any such examination. As a result, the costs of incarceration of Mr. Younger are entitled to administrative expense priority as nonlisted "actual, necessary costs and expenses of preserving the estate" pursuant to section 503(b)(1)(A).

### *Medical care rendered to the debtor*

■ Even if the costs of incarceration benefitted the estate by stopping Mr. Younger from dissipating his assets, Mrs. Younger contends that the estate should not bear the expenses of Mr. Younger's medical care while incarcerated. Mrs. Younger makes several arguments: the United States has the responsibility for providing medical care to persons in its custody, the expenses benefitted the debtor personally, and she should not be penalized for invoking her right to discovery.

Since Mr. Younger's incarceration conferred an actual and necessary benefit upon the estate, all costs attendant to that incarceration, including the current medical expenses, should be borne by the estate. When the Marshals Service incarcerated Mr. Younger pursuant to lawful order of the bankruptcy court, it assumed constitutional and statutory duties to provide him with reasonable medical care. *See Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976) (discussing government's Eighth Amendment obligation "to provide medical care for those whom it is punishing by incarceration"); 18 U.S.C.A. §§ 4005, 4006 (1985) (instructing furnishing and payment of medical care). By invoking

the process described in Rule 2005, Mr. Younger's creditors—in this instance, his wife—instituted an action admittedly to benefit the estate.[4] Upon the creditor's invocation of Rule 2005, the Marshals Service had no choice but to provide medical care to Mr. Younger during his incarceration; accordingly, the estate should bear this burden.

Given the constitutional and statutory duties to provide medical care to Mr. Younger, the expenses of medical care incurred by the Marshals Service cannot be considered personal to Mr. Younger. The underlying benefit to the bankruptcy estate renders the four cases relied upon by Mrs. Younger inapposite since each case involves an expenditure of no benefit to the estate. *See United States v. Sutton,* 786 F.2d 1305 (5th Cir.1986) (denying administrative expense treatment to support payments for the debtor's wife and children); *Walter v. Sunwest Bank (In re Walter),* 83 B.R. 14 (Bankr. 9th Cir.1988) (refusing to permit debtor use of estate assets to pay for debtor's personal living expenses since such an action would benefit only the debtor, not the estate); *In re Dervaes,* 81 B.R. 127 (Bankr.S.D.Fla.1987) (declining to allow the debtor to use estate property to purge a contempt sanction in state court); *In re Vincent,* 4 B.R. 21 (Bankr. M.D.Tenn.1979) (refusing to permit payment of necessary living expenses from assets of the estate despite the fact that the debtor suffered a heart attack).

4. Mrs. Younger appears to concede that the arrest pursuant to Rule 2005 benefits the estate. Her appellate brief states as follows:
    The Bankruptcy Court also pointed out that the costs and fees of the Marshals Service were incurred because of the "result of a court order sought by a private litigant [Mrs. Younger], a creditor who expected or hoped to reap a benefit from utilizing this procedure." (p. 11). However, with all due respect to the Bankruptcy Court, it has misconstrued the purpose of Fed.R.Bank.P. 2005. The procedure outlined under Fed.R.Bankr.P. 2005 is not a remedy that is available for the benefit of a creditor ... Rather, *it is a procedure employed for the benefit of the bankruptcy process as a whole* in order to bring the debtor before the court for the purposes of a Rule 2004 examination.
    Br. of Appellants, p. 11 (emphasis added).

5. Although not cited by either party, the Court has considered the following statute:
    The expenses attendant upon the confinement of persons arrested and committed under the

■ Mrs. Younger finally contends that giving administrative expense priority to these expenses would penalize her for securing a Rule 2004 examination of Mr. Younger. As part of this argument, she notes that Rule 2005 is employed to benefit the bankruptcy process as a whole in that it allows parties to obtain information from a reluctant debtor who refuses to cooperate with a Rule 2004 exam. Her explanation of the process belies her argument that having creditors bear the costs of incarceration penalizes her: By allowing the arrest of Mr. Younger, the bankruptcy court ensured that his creditors, including Mrs. Younger, would have a chance to obtain information from an elusive debtor and halt the spread of vanishing assets. While Mrs. Younger is Mr. Younger's only known creditor at the present time, requiring payment of these expenses from the bankruptcy estate does not penalize her; it benefits her and the bankruptcy process as a whole.[5]

### Treatment as a nonlisted expense under N.P. Mining

■ Mrs. Younger attacks the bankruptcy court's alternative holding that coercing Mr. Younger's compliance with federal law is of such vital importance to the bankruptcy process that costs incident to incarceration are no less deserving of priority classification than the costs incident to operating a busi-

laws of the United States ... shall be paid out of the Treasury of the United States in the manner provided by law.
18 U.S.C.A. § 4007 (1985 & Supp.1994). Section 4007 does not change the result in the case at bar. The costs of Mr. Younger's incarceration and medical care initially were paid out of the Treasury; nothing in the statute prevents the United States from seeking repayment from the responsible party. In fact, within the criminal context this statute serves as authorization for U.S.S.G. § 5E1.2(i). Pub.L. 100–690, 102 Stat. 4463 (1988) (*cited in* 18 U.S.C.A. § 4007 note (Supp.1994)). Section 5E1.2(i) permits a court to impose an additional fine upon a convicted defendant in an amount "at least sufficient to pay the costs to the government of any imprisonment ..." Section 4007's authorization of section 5E1.2(i) indicates that the United States properly may seek all costs of incarceration from the responsible party.

ness. In reaching this conclusion, the bankruptcy court rejected Mrs. Younger's argument that *N.P. Mining* turned on the fact that the fines were incidental to the operation of a business and stated that "policies other than benefit to or preservation of the estate operate[d] to confer administrative expense priority." *Younger,* 163 B.R. at 612.

This Court believes that *N.P. Mining* requires that the claimed costs be ordinarily incident to the operation of a business. *N.P. Mining* analyzed *Reading'*s holding that in "some cases," costs ordinarily incident to operation of a business could be afforded administrative expense priority. The civil fines at issue in *N.P. Mining* fell into the "some cases" category because they were ordinarily incident to operation of the debtor's business *and* a strong federal policy, compliance with state law, existed. *N.P. Mining,* 963 F.2d at 1458. In the case at bar, only one of the *N.P. Mining* factors existed: a strong federal policy. Accordingly, the expenses sought by the Marshals Services are not entitled to administrative expense priority under *N.P. Mining.*

### Conclusion

In this unusual case of first impression, the Court finds that the costs and expenses attendant to Mr. Younger's incarceration are entitled to administrative expense priority as actual and necessary costs of preserving the estate. Since the costs of incarceration necessarily include the costs of Mr. Younger's medical care, these expenses also are entitled to administrative expense status. The Court disavows the bankruptcy court's alternative holding under *N.P. Mining* since these costs were not ordinarily incident to operation of a business.

SO ORDERED.