In re Max R. MOSES and Marlene E. Moses, Debtors.

SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP and The Retirement Committeee for the Southern California Permanente Medical Group Retirement Plan, Appellants,

v.

Howard M. EHRENBERG, Chapter 7 Trustee, Appellee.

BAP No. CC–96–1899–MaVH.
Bankruptcy No. LA–96–15439–LF.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted June 18, 1997.

Decided Nov. 14, 1997.

Evan M. Jones, O'Melveny & Myers, L.L.P., Los Angeles, CA, for Southern California Permanente Medical Group.

Edward M. Wolkowitz, Los Angeles, CA, for Howard M. Ehrenberg.

Before: MacDONALD,[1] VOLINN, and HAGAN, Bankruptcy Judges.

1. Hon. Donald MacDonald IV, Chief Bankruptcy Judge for the District of Alaska, sitting by designation.

*OPINION*

MacDONALD, Bankruptcy Judge.

The Southern California Permanente Medical Group ("SCPMG") and the Retirement Committee for SCPMG ("the Committee") appeal the bankruptcy court's order sustaining the objection of Howard M. Ehrenberg, chapter 7 trustee, to the debtor's claim of exemption in a Keogh retirement plan sponsored by SCPMG. We REVERSE the order of the bankruptcy court.

## FACTS

Debtor Max R. Moses is an orthopedic surgeon and a partner in the Southern California Permanente Medical Group ("SCPMG"), a partnership of more than 2,400 physicians which provides medical services to Kaiser Permanente. Dr. Moses has been a partner in SCPMG for 18 years.

On February 21, 1997, at the age of 54, Dr. Moses and his wife filed a joint chapter 7 petition. On their schedule of personal property (Schedule B), Dr. Moses listed an interest in three pension plans with SCPMG: a Keogh plan with a value of $260,372.00; an ERISA qualified, defined benefit pension plan which will pay the debtor $11,000.00 per month upon retirement at age 65; and a 401(k) pension plan with a value of $1,263.00. On schedule B, the debtors indicated that the latter two plans were "excluded from bankruptcy estate by Section 541(c)." On the debtors' schedule C, all three plans were claimed wholly exempt pursuant to Cal. Code Civ. Proc. § 704.115.

The chapter 7 trustee, Howard M. Ehrenberg, filed an objection to the debtors' claim of exemption in the Keogh account. The debtors' exemption of the other two pension plans was not disputed. The trustee argued that the Keogh plan is a self-employment retirement plan, only exempt to the extent necessary to provide for the support of the debtors on retirement or the support of their dependents pursuant to Cal. Code of Civ.

Proc. § 704.115(e), and that in this case the debtors would be amply provided for in their retirement even without the Keogh funds. The trustee noted that the debtors' scheduled monthly gross income was $26,000.00, or $312,000.00 annually, and that even without the Keogh plan the debtors would receive more than $12,800 per month on retirement from Social Security benefits and Dr. Moses's defined benefit pension plan.

In opposition, the debtors advanced three arguments: 1) that the Keogh account is not property of the bankruptcy estate, pursuant to 11 U.S.C. § 541(c)(2), because the Keogh plan contains an anti-alienation provision as required by the Internal Revenue Code, 26 U.S.C. § 401(a)(13)[2]; 2) that the account is not property of the bankruptcy estate, pursuant to 11 U.S.C. § 541(c)(2), because the Keogh plan contains a spendthrift clause enforceable under California law; and 3) that the account is a profit-sharing plan established for retirement purposes, exempt in its entirety pursuant to Cal. Code Civ. Proc. § 704.115(a)(2).

The trustee responded that the Keogh plan is not an ERISA qualified plan and does not contain an enforceable anti-alienation provision, that the plan is not an enforceable spendthrift trust under California law because Dr. Moses is both the trust settlor and its beneficiary, and that the Keogh plan is a self-employed retirement plan which can only be claimed exempt to the extent necessary to provide for the support of the debtor or his dependents under Cal. Code Civ. Proc. § 704.115(a)(3) and (e).

At the hearing on the trustee's objection, the bankruptcy court indicated that it agreed with the "overall analysis" of *In re Witwer*, 148 B.R. 930 (Bankr.C.D.Cal.1992), *aff'd mem.*, 163 B.R. 614 (9th Cir. BAP 1994), and the trustee's interpretation of how that case applied to Dr. Moses's Keogh plan. An order granting the trustee's objection to the debtors' exemption claim was entered on August 12, 1996. The order provides that "Debtors" Keogh account with the Southern California Permanente Medical Group, Mellon Bank, N.A. account number ·870908, is non-exempt property of the bankruptcy estate not necessary to provide for the support of debtors when they retire within the meaning of California Code of Civil Procedure sections 704.115(a)(3) and (e), or any other section.' The order also directs the debtors, as well as Mellon Bank, N.A., or the current Trustee of the Keogh plan and the Committee appointed under the plan provisions, each Committee member and SCPMG, to turn over the funds in the debtors' Keogh account to the trustee. The debtors appealed this order.[3]

Appellants SCPMG and the Committee were unaware of the trustee's objection to the debtors' claimed exemption of the Keogh plan until shortly before the court's order was entered. Neither of the appellants was served with the trustee's objection, nor were they notified of the hearing. However, once the order was entered, SCPMG and the Committee were served with a copy. SCPMG and the Committee filed a motion for reconsideration with the bankruptcy court, which was denied. SCPMG and the Committee then filed a notice of appeal. The chapter 7 trustee moved for dismissal of the appeal, on the grounds that it was untimely and that SCPMG and the Committee lacked standing to appeal the order because they were not parties to the exemption proceeding. This motion was denied by an earlier panel.

On appeal, SCPMG and the Committee argue that the Keogh plan is excluded from property of the estate pursuant to 11 U.S.C. § 541(c)(2) because the anti-alienation provision in the Keogh plan is enforceable under federal law. The appellants also contend the Keogh plan should be considered an ERISA plan because it is jointly administered with benefit plans which include SCPMG employees as participants. Finally, the appellants contend the Keogh plan is an enforceable spendthrift trust under California law.

---

**2.** Provisions of the Internal Revenue Code will hereinafter be referred to as "I.R.C."

**3.** This appeal was dismissed for want of prosecution on February 21, 1997 (BAP No. CC–96–1794).

The trustee advances the same arguments he made to the bankruptcy court and again raises the issue of standing.[4]

## ISSUES

1) Whether SCPMG and the Committee have standing to pursue an appeal of an order which denies the debtor's claim of exemption and directs turnover of the debtor's Keogh plan assets.

2) Whether the bankruptcy court erred in holding that the debtors' interest in the Keogh plan was not excluded from the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2).

## STANDARD OF REVIEW

A bankruptcy court's factual findings are reviewed for clear error and its conclusions of law are reviewed de novo. *Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 279 (9th Cir.1992), citing *Arizona Appetito's Stores, Inc. v. Paradise Village Inv. Co. (In re Arizona Appetito's Stores, Inc.)*, 893 F.2d 216, 218 (9th Cir.1990). Issues involving statutory interpretation are reviewed de novo. *Chappel v. Proctor (In re Chappel)*, 189 B.R. 489, 491 (9th Cir. BAP 1995). Standing is also a question of law reviewed de novo. *Wedges/Ledges of Calif., Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 61 (9th Cir.1994).

## DISCUSSION

### I. DR. MOSES'S KEOGH PLAN

A qualified retirement plan is one that satisfies specific requirements of the Internal Revenue Code, particularly I.R.C. § 401(a), entitling it to receive favorable tax advan-

tages. Before 1962, self-employed individuals (sole proprietors and partners) could not participate in or obtain the tax benefits of such retirement plans. Keogh or "H.R. 10" pension plans were authorized by legislation enacted as the Self–Employed Individuals Tax Retirement Act of 1962, Pub.L. No. 87–792, 76 Stat. 809 (1962). The act's purpose was to provide self-employed individuals with an opportunity to participate in retirement plans on a comparable basis to those offered corporate employees. S.Rep. No. 992 (1961), reprinted in 1962 U.S.C.C.A.N. 2964, 2971–2972. To this end, the act amended § 401 of the Internal Revenue Code "to provide that self-employed individuals may be covered under qualified pension and profit sharing plans." *Id.* at 2990. Initially, only individuals who were employees under common law could participate in such plans. The act expanded the definition of employee "to include, for any taxable year, a self-employed individual who has earned income . . . for the taxable year." *Id.* at 2993. Further, since qualified plans had to be offered by "employers", the act expanded this definition as well, so that "an individual who owns the entire interest in an unincorporated trade or business" is treated as his own employer, and a partnership is treated as the employer of its partners. *Id.* at 2994.[5]

Keogh plans are generally subject to the same rules as plans offered corporate employees. These plans "contain more restrictions than do corporate plans, but they permit self-employed individuals to receive tax benefits analogous to those available under qualified corporate plans." *Larotonda v. Comm'r of Internal Revenue*, 89 T.C. 287, 290, 1987 WL 43887 (1987).

---

4. Although SCPMG and the Committee contend the standing issue was resolved when the trustee's motion to dismiss their appeal was denied, the standing issue raised here is distinguishable, as it deals with the appellants' ability to enforce the plan provisions, rather than their standing to appeal.

5. These definitions are found in I.R.C. § 401(c) which provides, in part:

(c) **Definitions and rules relating to self-employed individuals and owner-employees.**— For purposes of this section—

(1) **Self-employed individual treated as employee.**
 (A) **In general.**—The term "employee" includes, for any taxable year, an individual who is a self-employed individual for such taxable year.
 . . . .
(4) **Employer.**—An individual who owns the entire interest in an unincorporated trade or business shall be treated as his own employer. A partnership shall be treated as the employer of each partner who is an employee within the meaning of paragraph 1.

In this case, only the partner physicians, as "self-employed individuals," can participate in the Keogh plan offered by SCPMG. SCPMG's nonphysician employees have comparable coverage under other qualified plans offered by SCPMG. The Keogh plan is a profit sharing plan, and benefits are payable upon a participant's retirement, disability, death, or termination of his employment. The plan has been found to be "tax qualified" by the Internal Revenue Service. More than 2,400 physicians participate in the plan.

Mellon Bank, N.A., has been appointed the plan trustee. The plan is administered by a twelve-member Retirement Committee. Section 7.3(a) of the plan provides that "[t]he Committee or its agent shall be the Administrator as defined in Section 3(16)(A) of ERISA with respect to the Plan and, on behalf of the Participants and their Beneficiaries, shall enforce the Plan in accordance with its terms, and be charged with the general administration of the Plan." The debtor is not a member of this committee, although he can vote for one of its members.

Dr. Moses's election to participate in the Keogh plan is irrevocable. His participation continues so long as he is a partner of SCPMG. His contributions to the plan are mandatory, and the percentage of his income contributed to the plan is determined by provisions in both the plan and the I.R.C. Dr. Moses cannot borrow funds from the plan, and cannot receive distribution of the funds until he retires, becomes disabled, or terminates his employment with SCPMG. Dr. Moses, individually, cannot terminate or amend the plan; only the board of directors of SCPMG can do so. As required by I.R.C. § 401(a)(13), the plan contains an anti-alienation provision, which specifies:

11.4 Alienation.

(a) None of the benefits, payments, proceeds or claims of any Participant or Beneficiary shall be subject to any claim of any creditors and, in particular, the same shall not be subject to attachment or garnishment or other legal process by any creditor, nor shall any such Participant or Beneficiary have the right to alienate, anticipate, commute, pledge, encumber or assign any of the benefits or payments or proceeds which such Participant or Beneficiary may expect to receive, contingently or otherwise, under this Plan.

## II. THE ANTI–ALIENATION PROVISION IN TAX QUALIFIED PLANS

In 1974, the Employee Retirement Income Security Act ("ERISA"), Pub.L. No. 93–406, 88 Stat. 832 (1974), was enacted. ERISA is codified at 29 U.S.C. § 1001 et. seq., and in various sections of the Internal Revenue Code. ERISA was "designed to remedy certain defects in the private retirement system which limit the effectiveness of the system in providing retirement income security." H. Rep. No. 93–533 (1974), reprinted in 1974 U.S.C.C.A.N. 4639, 4639. Its primary purpose was "the protection of individual pension rights." Id.

To further this purpose, § 206(d) of ERISA, 29 U.S.C. § 1056(d)(1), provides that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." Similarly, ERISA amended I.R.C. § 401(a) by adding the following subparagraph:

(13) A trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated. For purposes of the preceding sentence, there shall not be taken into account any voluntary and revocable assignment of not to exceed 10 percent of any benefit payment made by any participant who is receiving benefits under the plan unless the assignment or alienation is made for purposes of defraying plan administration costs. For purposes of this paragraph a loan made to a participant or beneficiary shall not be treated as an assignment or alienation if such loan is secured by the participant's accrued nonforfeitable benefit and is exempt from the tax imposed by section 4975 (relating to tax on prohibited transactions) by reason of section 4975(d)(1). This paragraph shall take effect on January 1, 1976 and shall not apply to assignments which were irrevocable on the date of the enactment of the Employee Retirement Income Security Act of 1974 [September 2, 1974].

ERISA, § 1021(c); I.R.C. § 401(a)(13)(A). Accordingly, after the passage of ERISA, all tax qualified plans were required to contain an anti-alienation provision.

## III. THE TREATMENT OF QUALIFIED PENSION PLANS IN BANKRUPTCY

### A. The Split in the Circuits Before *Patterson v. Shumate*

Property of the bankruptcy estate is broadly defined in 11 U.S.C. § 541(a)(1) to include "all legal or equitable interests of the debtor in property as of the commencement of the case." However, certain interests are excluded from the debtor's bankruptcy estate under § 541(b) and (c)(2). Section 541(c)(2) provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title."

Prior to the Supreme Court's holding in *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), there was a split in the circuits as to whether the phrase "applicable nonbankruptcy law" contained in § 541(c)(2) referred only to state spendthrift trust law or included other applicable law (such as ERISA and other federal law), as well. The majority of courts that considered the issue, including the Ninth Circuit, interpreted this phrase to mean only state spendthrift trust law.[6]

The minority interpretation of "applicable nonbankruptcy law" was reflected in Fourth Circuit's decision, *Anderson v. Raine (In re Moore)*, 907 F.2d 1476, 1477 (4th Cir.1990). In that case, the court interpreted the term to mean "precisely what it says: all laws, state and federal, under which a transfer restriction is enforceable." The court found that an anti-alienation provision contained in a corporate pension and profit sharing plan, as required by ERISA, was an enforceable restriction under applicable nonbankruptcy

law, and that the interests of several debtors in the plan were excluded from property of their bankruptcy estates pursuant to § 541(c)(2).[7]

### B. The Supreme Court's Interpretation of § 541(c)(2)

The split in the circuits over the interpretation of § 541(c)(2) was resolved by the Supreme Court in *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). The debtor, Joseph B. Shumate, had worked for Coleman Furniture Corporation (CFC) for more than 30 years, ultimately becoming its president and chairman of the board. Shumate participated in an ERISA qualified pension plan which CFC offered its employees. The plan contained an anti-alienation provision as required by ERISA and I.R.C. § 401(a)(13).

After Shumate filed bankruptcy, he moved for payment of his pension plan interest. The lower court held that Shumate's interest in the plan could not be excluded from property of the bankruptcy estate under § 541(c)(2) because it did not qualify as a valid spendthrift trust under applicable state law. *Creasy v. Coleman Furniture Corp.*, 83 B.R. 404 (W.D.Va.1988). Shumate appealed. The Fourth Circuit, following the precedent of its earlier ruling in *Anderson v. Raine (In re Moore)*, 907 F.2d 1476 (4th Cir.1990), reversed the district court, and excluded Shumate's pension plan interest from the bankruptcy estate. *Shumate v. Patterson*, 943 F.2d 362 (4th Cir.1991). The Supreme Court granted certiorari "to resolve the conflict among the Courts of Appeals as to whether an anti-alienation provision in an ERISA-qualified pension plan constitutes a restriction on transfer enforceable under 'applicable nonbankruptcy law' for purposes of the § 541(c)(2) exclusion of property from the debtor's bankruptcy estate." *Patterson v. Shumate*, 504 U.S. at 757, 112 S.Ct. at 2246.

---

**6.** *See Daniel v. Security Pac. Nat'l Bank (In re Daniel)*, 771 F.2d 1352, 1360 (9th Cir.1985); *Lichstrahl v. Bankers Trust (In re Lichstrahl)*, 750 F.2d 1488 (11th Cir.1985); *Samore v. Graham (In re Graham)*, 726 F.2d 1268 (8th Cir.1984); *Goff v. Taylor (Matter of Goff)*, 706 F.2d 574 (5th Cir.1983).

**7.** The Third and Tenth Circuits also adopted the minority view. *Velis v. Kardanis*, 949 F.2d 78 (3rd Cir.1991); *Gladwell v. Harline (In re Harline)*, 950 F.2d 669 (10th Cir.1991).

The Court held that the phrase "applicable nonbankruptcy law" refers to "any relevant nonbankruptcy law, including federal law such as ERISA." *Id.* at 759, 112 S.Ct. at 2247.

Having concluded that "applicable nonbankruptcy law" is not limited to state law, we next determine whether the anti-alienation provision contained in the ERISA-qualified plan at issue here satisfies the literal terms of § 541(c)(2).

Section 206(d)(1) of ERISA, which states that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated," 29 U.S.C. § 1056(d)(1), clearly imposes a "restriction on the transfer" of a debtor's "beneficial interest" in the trust. The coordinate section of the Internal Revenue Code, 26 U.S.C. § 401(a)(13), states as a general rule that "[a] trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated," and thus contains similar restrictions. See also 26 C.F.R. § 1.401(a)–13(b)(1) (1991).

*Id.* After determining that the plan at issue contained an anti-alienation provision, as required by ERISA, the Court further stated:

Moreover, these transfer restrictions are "enforceable," as required by § 541(c)(2). Plan trustees or fiduciaries are required under ERISA to discharge their duties "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). A plan participant, beneficiary, or fiduciary, or the Secretary of Labor may file a civil action to "enjoin any act or practice" which violates ERISA or the terms of the plan. 29 U.S.C. §§ 1132(a)(3) and (5). Indeed, this Court itself vigorously has enforced ERISA's prohibition on the assignment or alienation of pension benefits, declining to recognize any implied exceptions to the broad statutory bar.

*Id.* at 760, 112 S.Ct. at 2247. The Court stated that its holding would give "full and appropriate effect to ERISA's goal of protecting pension benefits" and that its broad construction of § 541(c)(2) would ensure "that the security of a debtor's pension benefits will be governed by ERISA, not left to the vagaries of state spendthrift trust law." *Id.* at 764–765, 112 S.Ct. at 2250.

## C. The Ninth Circuit after Patterson v. Shumate

After *Patterson,* debtors in bankruptcy have been able to exclude from their bankruptcy estates, under § 541(c)(2), their interests in "ERISA qualified" pension plans. *See Barkley v. Conner (In re Conner),* 73 F.3d 258 (9th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 68, 136 L.Ed.2d 29 (1996); *Arkison v. UPS Thrift Plan (In re Rueter),* 11 F.3d 850 (9th Cir.1993); *Reed v. Drummond (In re Reed),* 985 F.2d 1026 (9th Cir. 1993). *Patterson* has not completely resolved the issue of how tax qualified pension plans are to be treated in bankruptcy, however. If a debtor's plan is found not to be an "ERISA qualified" plan, the degree of control he exercises over it remains relevant to the determination of whether the plan is excluded from the estate under § 541(c)(2). *In re Witwer,* 148 B.R. 930, 937 (Bankr. C.D.Cal.1992), *aff'd mem.,* 163 B.R. 614 (9th Cir. BAP 1994).

In *Witwer,* the debtor, a physician, was the sole shareholder and sole employee of his professional corporation. The corporation maintained a profit-sharing plan, tax-qualified under I.R.C. § 401(a) and containing an anti-alienation provision as required by I.R.C. § 401(a)(13). The debtor was the only participant in this plan. He was 100% vested in the plan, which had a value of $1.8 million. He had the ability to make withdrawals from the plan and had, in fact, received sizeable distributions from the plan. Since the debtor was 55 ("normal retirement age" under the plan), he was entitled to receive a single lump sum distribution from the plan. The plan provided that it could be terminated at will by the employer and that, upon termination, all accrued benefits would be distributed.

The bankruptcy court determined that the debtor's plan, although tax qualified, was not an "ERISA qualified" plan because the debtor could not be considered an employee for purposes of Title 1 of ERISA. The court

noted that in 29 U.S.C. § 1002(6), "ERISA defines 'participant' as a present or former employee of an employer," and that the applicable definition of "employee," found at 29 C.F.R. § 2510.3–3, excludes individuals who wholly own a business, whether incorporated or unincorporated. *Id.* at 935.[8] Since the debtor, a sole shareholder, could not be an employee as defined in 29 C.F.R. § 2510.3–3 and the plan had no other eligible participants, it was not an "ERISA qualified" plan. *Witwer,* 148 B.R. at 936. Because the plan was not "ERISA qualified," the statutory enforcement provisions contained in ERISA, 29 U.S.C. § 1132, could not be applied to enforce the anti-alienation provision required by I.R.C. § 401(a)(13), and no comparable enforcement provision could be found in the I.R.C. The court concluded that "[t]he provisions of I.R.C. § 401(a)·relate solely to the criteria for tax qualification" and did not "create any substantive rights that a beneficiary or participant of a qualified retirement trust can enforce." *Id.* at 937.[9]

Having determined that the anti-alienation clause in the debtor's plan was not enforceable under federal law, the court in *Witwer* next examined whether the provision would be enforceable under state spendthrift trust law. The court considered the degree of control the debtor had over his retirement plan to be a "crucial factor" in determining whether the anti-alienation provision was enforceable, noting that "[a] participant with excessive control over a trust is not protected by an anti-alienation provision." *Witwer,* 148 B.R. at 937. The court found the debtor had "unbridled control over the Plan and ... immediate access to the Plan assets." *Id.*[10] The court concluded the anti-alienation provision was not enforceable under state law and that the plan could not be excluded from the estate under § 541(a)(2). *Id.* at 938. How-

ever, because the debtor's pension was a profit sharing plan used for retirement purposes, the court found it was wholly exempt pursuant to Cal. Code Civ. Proc. § 704.115(a)(2). *Id.* at 941.

## IV. ANALYSIS

### A. Standing

The trustee alleges SCPMG does not have standing to maintain this appeal on two grounds. First, he argues that because I.R.C. § 401(a)(13) does not create a substantive right of action, the anti-alienation provision in the Keogh plan cannot be enforced by the debtors or any other party. This argument fails because, as discussed more thoroughly below, we find the anti-alienation provision to be enforceable under applicable state spendthrift trust law.

 The trustee also argues that SCPMG lacks standing because it is not a stakeholder with regard to the exemption proceeding. We disagree. In the bankruptcy context, appellate standing is determined by the "person aggrieved" test. *Fondiller v. Robertson (Matter of Fondiller),* 707 F.2d 441, 443 (9th Cir.1983). "Only those persons who are directly and adversely affected pecuniarily by an order of the bankruptcy court have been held to have standing to appeal that order." *Id.* at 442 (citations omitted). The order at issue here directly affects SCPMG, because it expressly directs SCPMG to turn over funds in the Keogh account. The order also adversely affects SCPMG because, as pointed out by SCPMG, compliance with the order would violate the plan's anti-alienation provision and result in loss of the plan's tax qualified status. SCPMG clearly has an interest in maintaining the tax qualified status of this plan.

---

8. Partners in a partnership are also excluded from this definition, unless the plan at issue also covers at least one or more common law employees. 29 C.F.R. § 2510.3–3(b) and (c).

9. In a more recent decision, *Watson v. Proctor (In re Watson),* 214 B.R. 597 (9th Cir. BAP 1997), another panel of this court also found that "single participant" retirement plans are not ERISA qualified. As in *Witwer,* the debtor in *Watson* was a doctor, and the sole shareholder and only employee of his professional corporation. The

court concluded that, because the plan was not ERISA qualified, it was property of the estate and the debtor was permitted to exempt only a portion of his plan assets under applicable Nevada law.

10. This finding was based on the debtor's ability, as the corporation's sole shareholder, to terminate or amend the plan, his ability to take loans against the plan, and the fact that he was entitled to immediate distribution in any event because he had reached "normal retirement age."

Loss of tax qualification would detrimentally impact all partners participating in the SCPMG plan, subjecting them to significant back-tax liability for contributions which would no longer be considered deferred income.

The Committee as well as SCPMG has standing to bring this appeal. The Committee is a stakeholder in this proceeding for the same reasons expressed above regarding SCPMG. Further, the Keogh plan gives the Committee the express duty of enforcing its terms. Section 7.3(a) of the plan specifies that "[t]he Committee ... on behalf of the Participants and their Beneficiaries, shall enforce the Plan in accordance with its terms." The trustee has not provided any authority to indicate why the Committee, a plan fiduciary, cannot perform this duty.

### B. Enforceability of Anti–Alienation Provision in Keogh Plan

■] If Dr. Moses's Keogh plan were an "ERISA qualified" plan, it would be excluded from the bankruptcy estate pursuant to § 541(c)(2), because the anti-alienation provision would be enforceable under ERISA, 29 U.S.C. § 1132(a)(3) and (a)(5). *Patterson,* 504 U.S. at 760, 112 S.Ct. at 2247. However, as noted in *Witwer,* 148 B.R. at 936, the statutory enforcement provisions contained in ERISA, 29 U.S.C. § 1132, are not applicable to plans which are not "ERISA qualified." Further, a plan which is tax qualified, but not "ERISA qualified," does not have a comparable federal statute for enforcing the anti-alienation provision required by I.R.C. § 401(a)(13). *Id.* at 937. Accordingly, for a pension plan which is not "ERISA qualified," the enforceability of the anti-alienation provision must still be determined under applicable state law. *Id.; see also Kennedy v. Allied Mut. Ins. Co.,* 952 F.2d 262, 264 (9th Cir.1991)(if a plan is not covered by ERISA, then state law controls).

11. On appeal, SCPMG has asserted that Dr. Moses's Keogh plan is an ERISA qualified plan because it is part of an "overall program" which is ERISA qualified. This argument was not raised below, and there is little evidence in the record to support it. Generally, an argument must be presented to the bankruptcy court first before it may be considered on appeal. *Credit Alliance Corp. v. Dunning–Ray Ins. Agency, Inc.*

■] ·In this case, we will assume Dr. Moses's Keogh is not an "ERISA qualified" plan.[11] Nonetheless, we find that the plan contains an anti-alienation provision which is enforceable under applicable state law.

California state law recognizes the general validity of spendthrift trusts. *In re Neuton,* 922 F.2d 1379 (9th Cir.1990); California Probate Code ("C.P.C.") §§ 15300 et seq. (West 1991). Under California law a settlor of a spendthrift trust cannot simultaneously be a beneficiary of the same spendthrift trust. Cal. Prob.Code § 15304(a)(West 1991).

*Witwer,* 148 B.R. at 937.

California law contains a provision prohibiting self-settled trusts. Cal. Prob.Code § 15304(a)(West 1997) provides:

(a) If the settlor is a beneficiary of a trust created by the settlor and the settlor's interest is subject to a provision restraining the voluntary or involuntary transfer of the settlor's interest, the restraint is invalid against transferees or creditors of the settlor. The invalidity of the restraint on transfer does not affect the validity of the trust.

The trustee contends that the Keogh plan is self-settled. However, SCPMG, rather than Dr. Moses, established and maintains the Keogh plan, in which more than 2,400 partners participate. In California, "[a] partnership is an entity distinct from its partners." Cal. Corp.Code § 16201 (West 1997). The trustee suggests Dr. Moses should be viewed as the settlor of the Keogh plan because as a partner, he is an owner of SCPMG. There is nothing in the record to justify a disregard for the partnership and treat Dr. Moses and the partnership as one and the same entity. SCPMG is the settlor of the Keogh plan.

*(In re Blumer),* 66 B.R. 109, 111 (9th Cir. BAP 1986), *aff'd* 826 F.2d 1069 (9th Cir.1987); *Consol. Mktg., Inc. v. Marvin Properties, Inc. (In re Marvin Properties, Inc),* 76 B.R. 150, 153 (9th Cir. BAP 1987), *aff'd* 854 F.2d 1183 (9th Cir. 1988). Because this argument was not presented to the bankruptcy court, we cannot review it here.

Further, even assuming Dr. Moses were the settlor, Cal. Prob.Code § 82(b)(13)(West 1997) excludes "[t]rusts for the primary purpose of paying debts, dividends, interest, salaries, wages, profits, pensions, or employee benefits of any kind" from the Probate Code's definition of trust. Accordingly, the trusts mentioned in § 82(b)(13) are exempt "from the self-settled rule" contained in Probate Code § 15304(a). *In re Phillips,* 206 B.R. 196, 202 (Bankr.N.D.Cal.1997).

■ In addition to determining whether a trust is self-settled, courts have looked at "the amount of 'dominion and control' exercised by the debtor over the trust property" to determine whether a valid spendthrift trust exists. *John Hancock Mut. Life Ins. Co. v. Watson (In re Kincaid),* 917 F.2d 1162, 1167 (9th Cir.1990)(evaluating a spendthrift trust under Oregon and Massachusetts law), citing *In re Kaplan,* 97 B.R. 572, 577 (9th Cir. BAP 1989). The debtor's degree of control is pertinent under California spendthrift trust law, and if the debtor has "excessive control" over the trust, the anti-alienation provision will not be enforced. *Witwer,* 148 B.R. at 937.

Dr. Moses's control over the Keogh plan is much more restricted than was the debtor's in *Witwer.* His situation is more like that of the debtor's in *Kincaid,* 917 F.2d 1162. In *Kincaid,* the debtor elected to participate in a pension plan created and administered by her employer, a life insurance company. Her interest in the plan could only be distributed upon retirement, disability, or termination of employment. The funds could also be distributed if the plan were terminated, or to her beneficiary on her death. In addition, the debtor could obtain a loan from the plan under certain *circumstances.* The Ninth Circuit concluded the plan was not self-settled, even though the debtor's participation in the plan was voluntary and she made contributions to the plan by deductions from her salary. *Id.* at 1167. The court noted that to conclude otherwise would elevate "form over substance given the variety of plans that exist in this area." *Id,* The court also concluded that the restrictions placed on the debtor's control of the funds were "sufficiently obstructive" to create a spendthrift

trust, so that the plan was not property of the estate under § 541(c)(2). *Id.* at 1168.

■ The same conclusion must be drawn here. The Keogh plan was created and is administered by SCPMG. Individually, Dr. Moses lacks the ability to terminate or amend the plan. His election to participate in the Keogh plan was voluntary but, once made, irrevocable. His contributions to the plan, although taken from his pre-tax earnings, are determined by provisions in both the plan and the I.R.C., and are not optional. As with the debtor in *Kincaid,* Dr. Moses cannot receive the funds in his Keogh account unless he retires, becomes disabled, or terminates his partnership with SCPMG. The ability to access the plan funds upon termination of employment "is not, by itself, sufficient to destroy the spendthrift character of the trust." *Kincaid,* 917 F.2d at 1168. Unlike the debtor in *Kincaid,* Dr. Moses cannot take loans against his Keogh plan.

Dr. Moses does not have the "unbridled control" over his plan. The degree of control he can exercise is sufficiently restrictive that the anti-alienation provision in his Keogh plan is enforceable under state spendthrift trust law. The Keogh plan is, therefore, excluded from property of the estate pursuant to § 541(c)(2). Having reached this conclusion, it is unnecessary to consider the trustee's argument that the Keogh plan cannot be claimed exempt under Cal. Code Civ. Proc. § 704.115. *Patterson,* 504 U.S. at 765–766, 112 S.Ct. at 2250–2251; *Spirtos v. Moreno (In re Spirtos),* 992 F.2d 1004, 1007 (9th Cir.1993).

## CONCLUSION

Dr. Moses's Keogh plan is excluded from property of the estate pursuant to 11 U.S.C. § 541(c)(2) because the anti-alienation provision contained in this tax qualified plan, as required by I.R.C. § 401(a)(13), is enforceable under state law. The order granting the trustee's objection to the debtors' claim of exemption in the Keogh plan and ordering turnover of the funds from SCPMG and the Committee is REVERSED and the trustee's

objection to the debtors' claim of exemption in the Keogh plan is denied.