**In re MILLERLEE CORP., Debtor.**

**Edward R. KRAFT, KPL Corporation and Edward R. Kraft Construction, Plaintiffs,**

v.

**FISK ASSOCIATES and Millerlee Corp., Defendants.**

**FISK ASSOCIATES, Cross-plaintiff and third-party plaintiff,**

v.

**MILLERLEE CORP. and William Lee, Cross-defendant and third-party defendant.**

**Bankruptcy No. 86 B 10880 (TLB).**

United States Bankruptcy Court, S.D. New York.

Feb. 27, 1987.

Victor & Bernstein, P.C. by Donald M. Bernstein, New York City, for Fisk Associates.

Jan O. Blau by Jan O. Blau, New York City, for plaintiffs.

Yost & O'Connell by Richard O'Connell, Flushing, N.Y., for trustee.

Jacoby & Meyers by Gregory Messer, Brooklyn, N.Y., for William Lee.

### DECISION ON MOTIONS FOR SUMMARY JUDGMENT

TINA L. BROZMAN, Bankruptcy Judge.

Before us are the defendants' and third-party defendants' motions for summary judgment in a mechanic's lien foreclosure action previously removed to this court. For the reasons discussed below, we grant the defendants' motions to dismiss the complaint against Fisk Associates ("Fisk") and deem the plaintiff's summons and complaint as a proof of claim for general unsecured debt against the debtor estate.

Fisk is the owner of premises which it leased to Millerlee Corp. ("Millerlee") for use as a bar and restaurant. Millerlee contracted with Edward R. Kraft Construction, a trade name of Edward R. Kraft, and a related corporation, KPL Corporation (collectively "Kraft"), to construct, renovate and remodel the bar and restaurant. The services were performed by Kraft; Millerlee paid a nominal amount due under the contract, leaving an unpaid balance in excess of $50,000.

On September 20, 1985, Edward R. Kraft and KPL Corporation filed a notice of mechanic's lien against the property in the appropriate county clerk's office. On November 4, 1985, Edward R. Kraft Construction filed a similar notice. Subsequently, by service of a summons and complaint dated February 5, 1986, Kraft commenced an action in the Supreme Court of New York against Fisk and Millerlee seeking to foreclose on the mechanic's liens ("Supreme Court Action"). No other action was taken with respect to these liens.

On May 15, 1986, Millerlee began a chapter 11 case which was later converted to chapter 7. Richard O'Connell was appointed trustee ("Trustee"). On October 27, 1986, he and Fisk entered into a stipulation pursuant to which, among other things, the lease between Fisk and Millerlee was surrendered and cancelled, Fisk paid the Trustee $12,500 and Fisk agreed to subordinate any claims for pre- and post-petition rent to the claims of all other general creditors. The stipulation was conditioned upon the removal of the Supreme Court Action to this court. The stipulation was approved by the court and the action removed.[1]

Fisk and Millerlee have each moved for summary judgment arguing that the mechanic's liens expired because Kraft did not extend them in accordance with the dictates of state law. Kraft urges that his liens subsist for two reasons, first, because his commencement of the Supreme Court Action extended them and, second, because

---

1. See the order of Judge Cornelius Blackshear    dated October 30, 1986.

the automatic stay embodied in 11 U.S.C. § 362 prohibited him from taking any further action regarding them. Alternatively, he asserts that even if we were to find that the liens expired, we should allow him nonetheless to proceed to judgment against the defendants for the amounts owing because those defendants are personally liable to him. To this end, Kraft argues that Fisk, who was not a party to the contract, has consented to the improvements by virtue of having authorized Kraft to file with the Department of Buildings of the City of New York a Building Notice Application ("Building Application") for a permit to perform the work. Fisk admits that it consented to the work being performed but contends that it never guaranteed or otherwise agreed to pay for the services.

DISCUSSION

■ We begin, as we must, with section 17 of the New York Lien Law which provides that a notice of mechanic's lien is viable for a period no longer than one year unless, within that time, the lienor either (a) obtains an order of the court extending the lien for a period up to one year and redockets the lien; or (b) commences an action to foreclose the lien *and* files a notice of pendency with the clerk of the appropriate county; or (c) is made a party defendant in an action to enforce another lien, and the plaintiff or such defendant has filed a notice of the pendency of the action. N.Y. Lien Law § 17 (McKinney's 1966 and Supp.1987).

Kraft's argument that the commencement of the foreclosure action alone continued the mechanic's liens flies in the face of an unambiguous statute enacted in 1909 which mandates that the lienor file a notice of pendency of that action.[2] Given the clarity of the statute, it is not surprising that the courts uniformly hold that the notice of pendency is an indispensable requirement to the continuation of a lien, which otherwise expires at the close of one year. *Noce v. Kaufman,* 286 App.Div. 531,

145 N.Y.S.2d 643 (4th Dep't 1955), modified on other grounds, 2 N.Y.2d 347, 161 N.Y.S.2d 1, 141 N.E.2d 529 (1957); *Mineola Road Oil Corporation v. Walsh,* 137 N.Y.S.2d 342 (Sup.Ct.1954); *Meszaros v. Indiveri,* 36 Misc.2d 632, 232 N.Y.S.2d 926 (Sup.Ct.1962); *Contractors Construction Co. v. Grossman,* 17 Misc.2d 710, 186 N.Y.S.2d 419 (Sup.Ct.1959). Similarly, the leading treatise in this area of law describes the notice of pendency as "indispensable" and the statutory requirement as "mandatory." Jensen, *Mechanics' Liens,* § 292 at 295, 296 (Marks 4th ed. 1963) (hereinafter, *"Jensen"*).

Notwithstanding this ample authority, Kraft points to one case, *In re Willax,* 93 F.2d 293 (2d Cir.1937), to support his view that the notice of pendency need not be filed in order to preserve the lien. He invites us to draw from the case something other than that which it holds.

In *Willax,* two lienors filed secured claims in a pending proceeding for a composition or extension under the former Bankruptcy Act. After adjudication, the bankrupt contested the validity of the claimants' liens, asserting that they had expired under state law. There was no dispute that the creditors had not taken steps to continue their liens; they had neither commenced a foreclosure action nor obtained a court order. The focus of the court and the holding in *Willax* was that the Bankruptcy Act did not and the referee was powerless to prevent the claimants from taking appropriate steps under state law to continue their liens. Thus, the liens were lost.

What Kraft hones in on is the Second Circuit's summary of the referee's rationale as to why the liens were lost. In summarizing, the circuit court paraphrased so much of section 17 *as was relevant to the facts* but did not quote the statute in full, understandably omitting, among other

---

**2.** The other avenues for extending the lien were concededly not pursued by Kraft and are not now in issue.

things,[3] any reference to the requirement that a notice of pendency be filed. (The notice of pendency requirement was of no moment because a foreclosure proceeding had never been commenced.) Based upon this omission alone, Kraft would have this court hold that the Second Circuit wrote the notice of pendency requirement out of the statute, a holding which would be a gross distortion of *Willax.* Indeed the Second Circuit was well aware of the full requirements of section 17 for it affirmed the district's court's decision which quotes the statute in full. *See In re Willax,* 20 F.Supp. 409, 413 (S.D.N.Y.1937).

Rejecting Kraft's interpretation of *Willax,* we hold that he did not comply with section 17, which he was bound to do. *See General Fire-Proof Door Corp. v. Citibank,* 544 F.Supp. 191 (S.D.N.Y.1982); *Application of Oxer,* 36 Misc.2d 314, 233 N.Y. S.2d 697, 699 (Sup.Ct.1969).

◼ We turn next to Kraft's argument that the automatic stay embodied in 11 U.S.C. § 362 prohibited him from taking the steps necessary to continue his liens. That argument has been previously rejected by an appellate court in this district.

The suppliers' right to assert liens under state law is not stayed by the debtor's chapter 11 petition. Rather, § 362(b)(3) and § 546(b) of the Bankruptcy Code, 11 U.S.C. § 362(b)(3), § 546(b), permit such liens to "relate back" to the time of the underlying debt's creation as provided by New York Lien Law § 13(5) (McKinney's 1982). *See In re C.H. Stuart, Inc.,* 17 B.R. 400 (Bkrtcy.W.D.N.Y.1982); *In re Fiorillo & Co.,* 19 B.R. 21, 8 B.C.D. (CRR) 1169 (Bkrtcy.S.D.N.Y.1982); King, et al., 4 *Collier on Bankruptcy* ¶ 546.03 (1979).

*Armstrong World Industries, Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.),* 29 B.R. 391, 393 (S.D.N.Y.

1983); *see also In re Chesterfield Developers, Inc.,* 285 F.Supp. 689 (S.D.N.Y.1968) (Chapter XI petition did not prevent the filing of a notice of lien); *Jensen,* § 294 at 297–98 (Marks 4th ed. 1983).

The notice of pendency serves merely to *continue* the lien. And *Willax* holds squarely that a bankruptcy filing does not enjoin proceedings to continue a lien, only to enforce it. *In re Willax,* 93 F.2d 293, 295 (2d Cir.1937). A look at what it is that a notice of pendency accomplishes explains why it should not be barred by the automatic stay.

A *lis pendens* is a notice of a claim made in respect to property which is the subject of a pending suit, but it does not of itself create an encumbrance upon the property. *Simon v. Vanderveer,* 155 N.Y. 377, 382, 49 N.E. 1043 (1898). The purpose of a notice of pendency was described in *Mechanics Exchange Savings Bank v. Chesterfield,* 34 A.D.2d 111, 113, 309 N.Y.S.2d 548 (1970) as follows: 'Its function is to carry out the public policy that a plaintiff's action shall not be defeated by an alienation of the property during the course of the lawsuit.'

*In re Kodo Properties, Inc.,* 63 B.R. 588, 589 (Bankr.E.D.N.Y.1986). Since the filing of a notice of pendency only continues the original mechanic's lien, which itself relates back to the date the work was completed (*see* N.Y. Lien Law §§ 17 & 13(5)), the filing cannot violate the automatic stay.[4] Kraft's appeal that we invoke our equitable power to preserve his liens is unavailing. That power is circumscribed by state law, which provides that we cannot revive a lapsed lien. *Willax, supra,* 93 F.2d at 295; *Jensen,* § 295, at 299 (Marks 4th ed. 1963 and 1983 Supp.).

◼ Finally, Kraft urges that even if his liens expired, this court should permit his action to proceed to judgment against both

3. The court also omitted the need to redocket a lien which has been extended by court order.

4. We note here, as we did at the hearing on this motion, that any concerns Kraft may have had about automatic stay violations could have been alleviated by his bringing a motion before this

court to lift the stay to enable him to either file a notice of pendency or obtain an order extending his lien. *See* 11 U.S.C. § 362(d). Kraft's response, that mechanic's lienors should not have to spend money to quell their fears, merits no discussion.

784

defendants because they are in any event liable to him. Specifically, section 17 of the Lien Law states in relevant part:

The failure to file a notice of pendency of action shall not abate the action as to any person liable for the payment of the debt specified in the notice of lien, and the action may be prosecuted to judgment against such person.

*See also* N.Y. Lien Law § 54 (McKinney's 1966); *Jensen,* § 292 at 297 (Marks 4th ed. 1963); *Reimer v. Naughton,* 191 App.Div. 711, 182 N.Y.S. 70, 72 (2d Dep't 1920); *Spartan Concrete Corp. v. Harbour Valley Homes, Inc.,* 71 A.D.2d 950, 420 N.Y. S.2d 14 (2d Dep't 1979).

We agree that notwithstanding the expiration of the liens Millerlee may be liable to Kraft. Thus, in light of the provisions of section 17 of the Lien Law, we could simply allow the pending action to continue against the estate. But because the Trustee has indicated that there may well be insufficient assets for any distribution to be made to unsecured creditors, it would be foolhardy to require him to continue at this time with the litigation. Accordingly, to save Kraft from the further expense of preparing a proof of claim, we will deem his summons and complaint to be one. Our determination in this action that the liens have expired will necessarily relegate Kraft to the status of an unsecured creditor. The amount of the estate's indebtedness to Kraft, if not earlier resolved by stipulation, may be litigated when, and if, the Trustee determines that there will be funds to distribute.

■ Although we agree that Millerlee may be contractually indebted to Kraft, our conclusion differs with respect to Kraft's putative deep pocket, Fisk, because the Lien Law does not impose any liability on a property owner which at common law does not otherwise exist.

Section 17 must be read together with section 54 of the New York Lien Law which provides:

If the lienor shall fail, for any reason, to establish a valid lien in an action under the provisions of this article, he may recover judgment therein for such sums as are due him, or which he might recover in an action on a contract, against any party to the action.

The purpose behind the enactment of section 54 was to preserve whatever common law relief a lienor had against a party despite the invalidity of the lien. *See Di Menna v. Cooper & Evans Co.,* 220 N.Y. 391, 115 N.E. 993 (1917); *Aex v. Allen,* 107 App.Div. 182, 94 N.Y.S. 844 (4th Dep't 1905).[5] Kraft argues that Fisk should be held liable because it knew the work was being performed and in fact filed the mandatory Building Application in which its approval was set forth. To this, Fisk counters that neither circumstance gives rise to personal liability, contractual or otherwise, to Kraft. We agree.

Examination of when a landlord is personally liable for payment to a contractor who has contracted only with the tenant must begin with Judge Pound's opinion in *Brigham v. Duany,* 241 N.Y. 435, 150 N.E. 507 (1926). In *Brigham,* the plaintiff brought an action against a tenant and the property owner to foreclose its mechanic's lien arising from a contract where materials had been supplied by the plaintiff to the tenant. The notice of lien was found to be defective and the plaintiff sought to recover a money judgment against the tenant and the property owner. In reversing the lower court, the Court of Appeals held that the plaintiff could not recover against the landowner.

The futile attempt to file a notice of lien in itself creates no contractual liability which does not otherwise exist. No recovery may be had herein on contract against the owner under the provisions of section 54....

*Id.* at 439, 150 N.E. 507. The court found that the landowner was not contractually liable even though that he had consented to

5. Prior to the enactment of section 54, if a plaintiff could not prove he had a valid mechanic's lien, equity was without power to grant a

personal judgment for the monies due him. *See Burroughs v. Tostevan,* 75 N.Y. 567 (1879); *Weyer v. Beach,* 79 N.Y. 409 (1880).

the improvements by the plaintiff and derived pecuniary benefit therefrom.

The facts and circumstances of the case as found do not imply a contract to pay for the materials furnished. The tenant is not, as such, the agent of the landlord who may charge him with personal liability for materials ordered for the improvement of the real estate. If the liens are confined to work and materials called for by the lease towards which the landlord is obligated to contribute, the landlord may be said to have made the tenant his agent for the purpose of subjecting the land to the lien of the improvement. (*McNulty Bros. v. Offerman*, [141 A.D. 730] 221 N.Y. 98.) But consent and benefit do not in themselves create an agency or import contractual liability as between the landlord and those who furnish materials on the tenant's credit.

Id. at 438–39, 150 N.E. 507.

Other decisional law is in harmony with *Brigham*. *See, e.g., Noce v. Kaufman, supra*, 2 N.Y.2d 347, 167 N.Y.S.2d 1, 141 N.E.2d 529 (1957) ("no personal liability exists against [the new landowner] in the absence of an express or implied agreement by them to pay for the improvements...."); *Dave v. Hajek*, 56 Misc. 673, 107 N.Y.S. 601 (Sup.Ct.App. Term 1907) (subcontractor with invalid lien did not have claim against owner of property with whom it had not contracted); *Mayer v. Delson Holding Corp.*, 139 Misc. 410, 247 N.Y.S. 346, 350 (Sup.Ct.N.Y.Co.1931) (same); *Builders Millwork Co., Inc. v. Nicolaysen*, 282 App.Div. 765, 122 N.Y.S.2d 841 (2d Dep't 1953) (subcontractors had contractual relationships with the general contractor, not the owners, and thus were not entitled to personal judgment against the owners); *Tager v. Healy Ave. Realty Corp.*, 14 A.D.2d 584, 218 N.Y.S.2d 679 (2d Dep't 1961) (plaintiff entitled to deficiency judgment only against the contracting party).

Consent by an owner of real property to have work performed is a necessary predicate to maintaining a lien against that property. N.Y. Lien Law § 3 (McKinney's 1987). But such consent does not give rise, without more, to liability to pay for the work. There must also be an express or implied agreement to pay for the improvements. *Noce v. Kaufman, supra*, 2 N.Y.2d 347, 167 N.Y.S.2d 1, 141 N.E.2d 529 (1957). In the instant case, Kraft has come forward with nothing to reflect that Fisk expressly agreed to pay for Kraft's work, that the debtor was acting as Fisk's agent, *see, e.g., August Bohl Contracting Company, Inc. v. IUE, AFL–CIO District No. 3*, 73 A.D.2d 1023, 424 N.Y.S.2d 752 (3d Dep't 1980), appeal dismissed 432 N.Y.S.2d 1027, or that Fisk somehow affirmed the contract, *see, e.g., Clothier v. Kracko*, 27 Misc.2d 917, 211 N.Y.S.2d 516 (Sup.Ct. 1961). The required Building Application functioned as a consent to performance of the work, but constituted no agreement to pay.[6] Accordingly, Fisk cannot be held liable to Kraft.

To defeat a summary judgment motion, the non-moving party must demonstrate the existence of material issues of fact to be resolved at a trial on the merits. *Murray v. Xerox Corporation*, 811 F.2d 118, 121 (2d Cir.1987). In the absence of such issues, the court is to order summary judgment if the movant is, as matter of law, entitled to same. Fed.R.Civ.P. 56(c); *Nahtel Corporation v. West Virginia Pulp & Paper Co.*, 141 F.2d 1, 2 (2d Cir.1944); *see Chappel & Co. v. Frankel*, 367 F.2d 197, 204 (2d Cir.1966) (en banc); *Teitelbaum v. Equitable Handbag Co. (In re Outlet Department Stores, Inc.)*, 49 B.R. 536 (Bankr. S.D.N.Y.1985). Properly used, summary judgment permits a court to streamline the process for terminating frivolous claims. *Knight v. U.S. Fire Insurance Company*, 804 F.2d 9, 12 (2d Cir.1986).

Here, we have no material factual disputes. We grant summary judgment in

---

6. Were we to find otherwise, all landowners in New York City for whose buildings work permits were issued on behalf of a tenant would become personally liable to the lienor, an absurd result.

favor of Fisk and dismiss the complaint as to it. It follows that Fisk's third party complaint must also be dismissed. We grant the trustee's motion for summary judgment to the extent of declaring the liens invalid and, as discussed earlier in this decision, deem the summons and complaint a proof of claim for general unsecured debt.

SETTLE ORDER FOR JUDGMENT IN ACCORDANCE WITH THIS OPINION.