**In re Dennis J. PAPPAS, Debtor.**

**No. 096–73437–511.**

United States Bankruptcy Court, E.D. New York.

May 7, 2002.

Pryor & Mandelup, L.L.P., by Anthony F. Giuliano, Westbury, NY, for John Marshall/Movant.

Alan Vinegrad, United States Attorney, by Thomas McFarland, Bartholomew Cirenza, Washington, D.C., for United States of America, U.S. Department of Justice, Tax Division.

Zeichner Ellman & Kraus, LLP, by Nathan Schwed, New York City, for Chapter 7 Trustee.

Office of the United States Trustee, by Terese A. Cavanagh, Central Islip, NY.

### DECISION AND ORDER

MELANIE L. CYGANOWSKI,
Bankruptcy Judge.

Before the Court is a Motion by creditor, John Marshall, Esq. ("Marshall"), for Payment of Administrative Fees Pursuant to 11 U.S.C. §§ 105 and 503(b)(3)(B). By the Motion, Marshall requests administrative expense status for $115,787[1] of his fees and expenses in "assisting the Trustee in the discovery and recovery of significant assets." Both the Chapter 7 Trustee and the Internal Revenue Service object to the Motion and argue, in brief, that Marshall's request does not fit squarely within Section 503(b)(3)(B) and, therefore, should be denied. For the reasons stated herein, the Motion is granted with respect to $12,237 of the expenses requested in the Motion, and the Motion is denied with respect to the remainder.

### FACTUAL BACKGROUND

This case was commenced on July 17, 1996, by the Debtor's filing of a voluntary petition under Chapter 7 of the Bankruptcy Code.[2] On or about October 4, 1996, Allan B. Mendelsohn, Esq., was elected to serve as the Chapter 7 trustee ("Trustee"), and on October 28, 1996, the Trustee obtained permission to employ the law firm of Zeichner, Ellman & Krause, as his counsel. It is undisputed that the Debtor's bankruptcy filing was precipitated by the fact that the movant, the Debtor's former law partner—John Marshall—had obtained a judgment (the "Judgment") prepetition against the Debtor in the amount of $4,666,000.38.

On August 29, 1996, Marshall filed a claim in the amount of $4,666,000.38 based upon the Judgment.[3] Five other claims were filed in the case:

> (1) On June 18, 1998, Hon. Irving Tenenbaum filed a general unsecured claim in the amount of $34,500 for fees

---

1. *See* footnote 6, below.

2. The petition originally was filed in the United States Bankruptcy Court for the Southern District of New York. On October 25, 1996, on Marshall's motion, the case was transferred to the United States Bankruptcy Court for the Eastern District of New York.

3. The Court assumes, for the purposes of this Decision, that Marshall properly filed a Proof of Claim on August 29, 1996. Nonetheless, the file that is maintained in the Clerk's Office does not contain an original proof of claim filed by Marshall. No one disputes that Marshall has a valid, timely filed claim. Indeed, earlier in the case, the Debtor made an Application to Expunge Marshall's claim and at no time was the proper filing of the claim questioned.

associated with his role as a court-appointed referee;

(2) On November 16, 1998, J & J Farra Negligee Inc. filed a general unsecured claim in the amount of $241,231.15 [4];

(3) On March 17, 1999, the United States of America filed a general unsecured claim in the amount of $1,801,380 for criminal restitution/fines;

(4) On April 9, 1999, the Internal Revenue Service ("IRS") filed a claim for taxes in the amount of $3,685,744.52, asserting a priority for $3,531,256.52 of that amount; and

(5) On February 10, 2000, the IRS filed a (presumably, amended) proof of claim in the amount of $5,203,902.08, asserting a priority for $4,674,834.82 of that amount.[5]

It is undisputed that from the inception of the bankruptcy case through the end of 2000, Marshall was an active participant in the bankruptcy case and that he cooperated with the Trustee and his counsel on several matters. According to Marshall, until the IRS filed its February 10, 2000 claim, he was the only creditor of the Debtor's estate (Motion ¶¶ 9, 36) and it was not until then that it became apparent that he would receive none of the estate funds collected by the Trustee—currently estimated at about $713,000.[6] All agree that, after payment of the IRS's priority

claim, there will be no funds available for the payment of general unsecured claims, which would include Marshall's claim.

By his motion, Marshall claims that he "substantially assisted the Trustee in the discovery and recovery of significant assets" by his personal activities as well as through the efforts of his attorneys and other professionals that he personally retained. (Motion ¶ 7). The fee request of $115,787 [7] breaks down as follows:

- $86,750 for "legal, administrative and investigative services ... provided to the Trustee and his attorney in their efforts to locate the debtor's assets." *See* Marshall Affidavit ("Marshall Aff."), sworn to January 24, 2001, ¶ 2. Marshall is an attorney and he is seeking administrative expense status for his own time spent on this case, at his regular hourly billing rate of $250 per hour;

- $16,800 for legal fees paid to Charles Singer, Esq. in defeating the Debtor's efforts to vacate the Judgment obtained by Marshall in state court. *See* Marshall Aff. ¶ 3. Marshall claims that if the Debtor had been successful in vacating the Judgment, the Debtor would have voluntarily dismissed his Chapter 7 case and nothing would have been recovered by the Chapter 7 Trustee;

---

4. What appears to be a duplicate of this claim was filed on November 20, 1998.

5. For purposes of this Decision, the Court will assume that each of these claims is valid and timely-filed.

6. As noted, this argument is not supported by a review of the claims' register which shows that four claims in addition to that of Marshall's had been filed prior to early 2000 and that the IRS had first filed its proof of claim one year earlier, *i.e.*, on April 9, 1999.

7. Although the Motion seeks administrative expense status for total fees and expenses of $117,842, the Court believes that to be a miscalculation. In paragraph 3 of Marshall's Affidavit, Marshall claims $18,855 as reimbursement of legal fees for Charles Singer, Esq. However, Marshall admits that Singer's legal fees were $16,800. A total of $18,855 would include $16,800 in fees, *plus* $2,055 in expenses. However, those expenses are separately itemized as the last element of the Motion. If the Singer expenses are only counted once, the total sought by Marshall is only $115,787.

- $10,182.00 for legal fees paid to Pryor & Mandelup (Marshall's personal counsel) in moving to lift the automatic stay so that Marshall could renew a notice of pendency filed pre-petition against the Debtor's interest in certain property in Commack, New York and Freeport, New York. Marshall claims that the renewal of the notice of pendency "preserv[ed] those assets for the benefit of the estate." *See* Marshall Aff. ¶ 4; and

- $2,055 for expenses related to Marshall's investigation of property known as the Montauk Sanctuary, including hiring a licensed private investigator, and obtaining a title report for the real property and certified copies of all deeds and related documents. *See* Motion ¶¶ 10–11; Marshall Aff. ¶ 5.

On March 16, 2001, Marshall filed a Supplemental Application in Support of the Motion. Attached to the Supplemental Application is an Affidavit of Charles A Singer, Esq., supporting $9,036.19 of the $16,800 fee request referred to above. The Supplemental Application also describes several categories of work billed to Marshall by Pryor & Mandelup, the total amount of which is $70,471.50.[8] These time charges were submitted to the Court "in further support of [the Motion] for allowance of $117,842.00." (Supp.App. ¶ 5). Marshall states that he "is not seeking compensation for these fees over and above the compensation sought in the initial application, rather Marshall merely submits these additional fees in further support of the administrative fees sought in the initial application." (Supp.App. ¶ 23).

Further, Marshall states "[a]s indicated above, Marshall is seeking $117,342.00 [sic] as an administrative expense pursuant to 11 U.S.C. § 105 and 503(b)(3)(B)." (Supp. App. ¶ 23).

Because Marshall does not seek reimbursement of these additional fees to Pryor & Mandelup as an administrative expense, they will not be considered here, except as evidence that Marshall incurred substantial legal fees during the course of this Chapter 7 case. In sum, then, the total amount of fees and expenses for which Marshall seeks administrative expenses status is $115,787 as set forth in the Motion.

As noted, both the Trustee and the IRS oppose the Motion. While the Trustee commends Marshall "for being an extremely cooperative creditor" (*see* Objection to Application of John Marshall for Allowance of Fees and Expenses, dated February 7, 2001 ("Trustee's Objection"), ¶ 1), he and the IRS point out that Marshall did not (i) obtain Court approval prior to rendering his services, (ii) recover property for the benefit of the estate, or (iii) recover property that had been transferred or concealed by the Debtor. *See* Trustee's Objection, ¶ 19. Consequently, the Trustee and the IRS argue that Marshall's expenses do not satisfy the requirements of Section 503(b)(3)(B) and should be denied.

## DISCUSSION

 Marshall relies primarily upon 11 U.S.C. §§ 105 and 503(b)(3)(B). Section 503(b)(3)(B) provides, in pertinent part, that:

---

**8.** The Supplemental Application states that Marshall incurred $65,868.50 in additional fees to Pryor & Mandelup. (Supp.App.¶ 6). However, when the component parts of the billable time referenced in ¶¶ 10, 12, 15 (as modified by Pryor & Mandelup's March 23, 2001 Affirmation in Further Support of the Motion), 18 and 21, are added up, the sum is $70,471.50.

[a]fter notice and a hearing, there shall be allowed administrative expenses ..., *including*—the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) ... incurred by—a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor....

11 U.S.C. § 503(b)(3)(B) (emphasis added). The use of the word "including" is significant. Subsection (b)(3)(B) is but one example of administrative expense allowed under Section 503(b). The categories of administrative expense listed in Section 503(b) are intended to be illustrative, not exhaustive. *See* 11 U.S.C. § 102(3) (providing that the terms " 'includes' and 'including' are not limiting"); *In re Colortex Indus.*, 19 F.3d 1371, 1377 (11th Cir.1994) (finding use of term "including" in Section 503(b)(1) not intended to be limiting); *In re Younger*, 165 B.R. 965, 968 (S.D.Ga. 1994) ("Expenses not explicitly listed in the statute can receive administrative expense status in one of two ways: as a nonlisted 'actual, necessary' expense of preserving the estate under section 503(b)(1)(A) or as a nonlisted administrative expense under section 503(b)"), *aff'd*, 51 F.3d 1051 (11th Cir.1995).[9]

Thus, for the purposes of this motion, the Court will consider Marshall's application for administrative expense status under Section 503(b) generally, rather than limited to the specific category of administrative expense described in Section 503(b)(3)(B).

■ Nonetheless, the ambit of what can and should be granted administrative expense priority is not without limit. The Court is persuaded by the facts and holding in *In re Zedda*, 169 B.R. 605 (Bankr. E.D.La.1994). In that case, a creditor requested administrative expense status for its legal fees incurred in connection with laying the groundwork for the trustee's fraudulent conveyance complaint which resulted in a substantial judgment in favor of the estate. Significantly, in that case, the trustee agreed that "*but for* the work completed by the movers, a judgment in favor of the estate in the amount of $54,383.57 would not have been entered." *Zedda*, 169 B.R. at 607 (emphasis added). Despite the creditor's failure to completely satisfy the language of Section 503(b)(3), the court in *Zedda* granted administrative expense status "because the movers' services substantially benefitted the estate and assisted in the recovery of assets ...." *Id.* at 608. This Court agrees with *Zedda's* analysis.

■ Yet, this is but one prong of the analysis. While the Court acknowledges that a creditor's request for administrative expense status may be granted under Section 503(b) where the services provided by a creditor bestowed a substantial benefit to the estate and assisted in the recovery of assets, to the extent that a creditor is claiming that it "assisted the trustee," it is necessary that the trustee agree that the creditor's efforts actually "assisted" the trustee, in fact. In the words of *Zedda*, that "but for" the assistance of the creditor, the trustee's efforts would not have yielded benefit to the estate. These fac-

---

**9.** The Court recognizes the countervailing considerations that militate in favor of a narrow construction of administrative expense status "in order to maximize the value of the estate preserved for the benefit of all creditors." *See Colortex Indus.*, at 1377 (citing *Otte v. United States*, 419 U.S. 43, 53, 95 S.Ct. 247, 42 L.Ed.2d 212 (1974)). In this case, however, the only creditor that would be prejudiced, by the granting of administrative expense status to Marshall, is the IRS. Unless the Trustee recovers substantial additional assets for distribution (which is unlikely), general unsecured creditors in this case will not receive any distribution.

tors, along with other considerations discussed below, guide the Court's consideration of the Motion.

### Marshall's Own Legal Fees ($86,750)

■ Marshall seeks administrative expense status for payment of $86,750 for "legal, administrative and investigative services [he] provided to the Trustee and his attorney in their efforts to locate the debtor's assets." *See* Marshall Aff. ¶ 2. According to Marshall, these services include "(a) telephone conversations and letters to the Trustee and his attorney; (b) providing the Trustee and his attorney with state court litigation files; (c) providing the Trustee and his attorney with post-petition bankruptcy court discovery demands; (d) litigating post-petition issues in the various state court actions; and (e) providing investigative services to collect the debtor's assets." *See* Marshall Aff. ¶ 10. Essentially, Marshall wants to bill the estate $250 per hour of his time spent in "assisting" the Trustee in his recovery of assets.

Marshall has submitted time sheets to support 347 [10] hours that he devoted to this bankruptcy case during the period of July 30, 1996 to November 1, 2000. These time sheets contain entries such as 6 hours for a "Visit to Montauk real property"; 1.5 hours "Organizing copies for Mr. Pryor"; 4 hours for "Appearance at § 341 Creditors meeting in Manhattan"; 4 hours for "Attendance at Bankruptcy Court for argument of Summary Judgment Motion in Pappas Adversary case"; 4 hours for "Testimony before Judge Phelan"; and 5 hours for "Listening to argument on bankruptcy court motion."

Undoubtedly, Marshall spent a significant amount of his own personal time on matters related to the bankruptcy case of Mr. Pappas. The Court is not, however, persuaded that Marshall should be compensated by the estate for that time by receiving administrative expense status under Section 503(b).

First, Marshall cites no authority (nor could the Court find any) for the premise that Section 503(b) provides a basis to compensate a creditor for his own personal time devoted to a matter. The mere fact that the creditor happens to be an attorney who bills $250 per hour does not change the inquiry. Section 503(b) provides that "actual" "expenses" may be afforded administrative expense status. Marshall's billable time, although valuable, was not an "actual expense" to Marshall.

Second, under no scenario could Marshall have been retained by the Trustee to provide services to the Trustee. Section 327(a) allows the Trustee to employ attorneys and other professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons . . . ." 11 U.S.C. § 327(a). Because he is a creditor of the estate, Marshall (a) holds an interest adverse to the estate, and (b) is not "disinterested." 11 U.S.C. § 101(14).

For these reasons, the Court denies Marshall's request for administrative expense status for the $86,750 in legal fees for Marshall's personal time spent on the Debtor's case.

### Singer Fees Incurred in Defeating the Debtor's Efforts to Vacate State Court Judgment ($16,800)

■ Marshall argues that because his Judgment against the Debtor was the Debtor's motive for filing bankruptcy, and

**10.** When Marshall manually totaled the number of hours that were represented by his time sheets, he handwrote the number "374." The Court believes that this is a mistake and that the correct number of hours is 347.

## 178

his only reason for remaining in bankruptcy, Marshall's expenses in preserving that Judgment should be granted administrative expense priority. *See* Motion ¶¶ 8–9. According to Marshall, "Mr. Pappas believed that without my judgment there would be no reason for him to be in bankruptcy court and his petition could be dismissed since I was the only creditor in the case." *See* Marshall Aff. ¶ 13.

■ The Court is not persuaded that Marshall's expenses in preserving the Judgment were of sufficient benefit to the estate to warrant administrative expense status. First, contrary to his assertions, Marshall was not the sole creditor of this estate prior to the filing of the IRS claim in February, 2000. Although he was the first to file a claim, several other claims were filed as early as May, 1998. Second, it is only surmise on Marshall's part that the Debtor would seek to withdraw his bankruptcy petition upon a vacatur of Marshall's Judgment and, in any event, a debtor does not have an absolute right to dismiss a Chapter 7 case. *See In re Klein,* 39 B.R. 530, 532 (Bankr.E.D.N.Y.1984). A debtor's request for voluntary dismissal must be approved by the Court after a hearing on notice to the Chapter 7 trustee and all creditors. *Id.;* Fed. R. Bankr.P. 1017(a). Third, the vacatur of the Judgment would not negate Marshall's claim against the estate; it would only mean that Marshall was no longer a judgment creditor. *See* 11 U.S.C. § 101(5)(A) (providing that a claim is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured"). Finally, the Trustee disagrees and denies that Marshall's efforts to maintain the Judgment provided any benefit to the estate or assisted him in the recovery of estate assets.

For these reasons, the Court denies Marshall's request for administrative expense status for the $16,800 in fees that he incurred in defeating the Debtor's efforts to vacate his Judgment.[11]

### P & M Fees to Lift the Automatic Stay to Renew Notice of Pendency Against Certain Property ($10,182).

■ During the bankruptcy, Marshall brought a motion in state court to renew a *lis pendens* on the Debtor's interest in certain property in Freeport, New York and Commack New York. Marshall claims that this was "instrumental in the Trustee's adversary proceeding to recover these properties as fraudulent conveyances." (Motion ¶ 15). Before renewing the *lis pendens,* however, Marshall sought and obtained relief from the automatic stay imposed by Section 362 of the Bankruptcy Code. Marshall seeks administrative expense status for the $10,182 in fees he paid to Pryor & Mandelup in moving to lift the automatic stay.

For his part, the Trustee admits that "[t]he post-petition renewal of the *lis pendens* provided comfort to the Trustee that the properties would not be transferred until such time that the Trustee commenced an action to recover the properties." (Trustee's Objection, ¶ 14). Had the properties been transferred by the Debtor prior to the Trustee's commencement of an action to recover the properties, the estate would have incurred additional expenses in pursuing those properties as against the Debtor's transferee. In addition, the renewal of the *lis pendens* was exclusively within the

---

11. Because the Court denies administrative expense status for this category of fees, it need not address the issues raised by the fact that Mr. Singer's affidavit only supports billings in the amount of $9,036.19, rather than the requested, $16,800.

control of Marshall. The Trustee had no power to renew the *lis pendens;* nor did he have the authority to compel Marshall to renew the *lis pendens.* This was a benefit to the estate that was uniquely within the control of Marshall.

For all of the foregoing reasons, the Court grants Marshall's request for administrative expense status for the $10,182 in fees that he incurred in moving to lift the stay to renew the *lis pendens* against the Debtor's property.[12]

**Expenses associated with Montauk Sanctuary Property ($2,055)**

■ Marshall seeks administrative expense priority for $2,055 in expenses that he incurred when he hired a licensed private investigator and obtained a title report and other documents in the chain of title regarding the Montauk Sanctuary Property. (Motion ¶ 11). Counsel for the Trustee concedes that the Trustee benefitted from this information and that this was an expense that the Trustee would have had to incur, had Marshall not obtained the information and made it available to the Trustee. (*See* Transcript of March 26, 2001 hearing, at 24–25). Based upon this representation, the Court grants administrative expense priority for Marshall's $2,055 expense in investigating the Montauk Sanctuary property.

### CONCLUSION

For all these reasons, the Motion is granted with respect to $12,237 of the expenses requested in the Motion, and denied with respect to the remainder.

The Clerk is directed to serve a copy of this Memorandum Decision and Order upon each of the affected parties.

SO ORDERED.

---

12. In its opposition, the IRS argues that Marshall was under no obligation to seek relief from the automatic stay in order to renew the *lis pendens* against the Commack and Freeport properties. The IRS cites two cases to support this argument: *American Motor Club, Inc. v. Neu,* 109 B.R. 595, 597 (Bankr. E.D.N.Y.1990); and *Fisk Assocs. v. Millerlee Corp.,* 70 B.R. 780 (Bankr.S.D.N.Y.1987). As these decisions reflect, however, the case law is split and, as a consequence, the Court does

not believe that it was unreasonable for Marshall to believe that relief from the automatic stay was necessary prior to renewing the *lis pendens. See, e.g., In re Edwards,* 214 B.R. 613, 618 (9th Cir. BAP 1997) ("The protection of the automatic stay is extensive, and courts have construed its broad scope to prohibit the post-petition filing or recording of a notice of lis pendens."); *In re Elrod,* 91 B.R. 187, 189 (Bankr.M.D.Ga.1988).