**In re Paul MAGHAZEH, Debtor.**

**Marc A. Pergament, Trustee of the Estate of Paul Maghazeh, Plaintiff,**

**v.**

**Maghazeh Family Trust, Bay Ridge Savings and Loan Association, JPMorgan Chase Bank f/k/a/ Chemical Bank, H.F. Investors, Inc., Joan R. Addrizzo, M.D., Chitoor Govendarraj, M.D., P.C. Retirement Trust, United States of America, Hamilton Federal Savings and Loan Association, Danmar Management Limited Partnership, Copelco Leasing Corp., General Electric Company, Eaton Financial Corporation, Zimmer, Victor & Bernstein, Nirmala Batheja, the Bank of New York, New York State Department of Taxation and Finance, Cobble Resources, Inc., Defendants.**

Bankruptcy No. 801–87924–DTE.
Adversary No. 802–8181–DTE.

United States Bankruptcy Court,
E.D. New York.

Sept. 30, 2004.

Marc A. Pergament, Esq., Garden City, NY, Chapter 7 Trustee.

Larry I. Glick Esq., Garden City, NY, for Defendant.

Steinberg, Fineo, Berger & Fischoff, P.C., By Gary Fischoff, Esq., Woodbury, NY, for the Debtor.

Bernstein & Schwartz, LLP, By Jeffrey Schwartz, Esq., New York City, for Cobble Resources, Inc.

Weinberg, Kaley, Gross & Pergament, Garden City, NY, for the Chapter 7 Trustee.

Law Offices of Charles Stiene, Mineola, NY, for JP Morgan Chase Bank.

Office of the U.S. Trustee, By Terese Cavanagh, Esq., Central Islip, NY, for the Eastern District of New York.

U.S. Department of Justice, By Bartholomew Cirenza, Esq., Bonni J. Perlin, Esq., Washington, DC, for the United States of America.

## DECISION ON MOTION BY UNITED STATES FOR ALLOWANCE OF FEES AND EXPENSES

DOROTHY EISENBERG, Bankruptcy Judge.

This matter is before the Court pursuant to a motion by the United States of America (the "United States") seeking payment of legal fees and expenses incurred in connection with its successful actions in an adversary proceeding which resulted in the discovery of certain assets

for the benefit of the estate of Paul Maghazeh (the "Debtor"). The United States seeks to have these fees and expenses incurred deemed administration expenses pursuant to 11 U.S.C. § 503(b)(3)(B) and (4). Based on the facts of this case as well as applicable case law, the Court grants the motion of the United States. The following constitutes the Court's findings of fact and conclusions of law pursuant to 11 U.S.C. § 702.

## FACTS

Marc A. Pergament is the Chapter 7 trustee in this case (the "Trustee"). The Trustee commenced an adversary proceeding to determine the validity and priority of liens, claims and encumbrances against two real properties owned by the Debtor— one located in Brooklyn, New York (the "Brooklyn Property") and one in Cutchogue, New York (the "Cutchogue Property"). After making certain distributions to the real estate brokers and certain parties holding undisputed claims and mortgage liens, the Trustee held undistributed net sales proceeds from the Brooklyn Property in the amount of approximately $1.125 million and undistributed net sales proceeds from the Cutchogue Property in the amount of approximately $2.519 million, before subtracting the allowed judgment liens held by Cobble Resources, Inc., an allowed secured creditor. The Trustee made a motion for summary judgment seeking, *inter alia,* the right to distribute the entire net proceeds from the sale of the Brooklyn Property and the amount of $1,747,776.10 from the net remaining sales proceeds of the Cutchogue Property to an entity called the Maghazeh Trust. The Maghazeh Trust asserted mortgage liens against the Brooklyn property in excess of the net sale proceeds held by the Trustee, and asserted mortgage liens against the Cutchogue property in the amount of $1,946,037.37. The Maghazeh Trust is an irrevocable trust which was set up by the Debtor prepetition. The beneficiaries and trustees of the Maghazeh Trust are the Debtor's children. The mortgages were purchased by the Maghazeh Trust in 1997 from an entity called the Danmar Management Limited Partnership during the pendency of a previous Chapter 7 case filed by the Debtor. If the mortgages purchased by the Maghazeh Trust were allowed to stand, then the distribution to creditors in this case would not reach the unsecured creditors, and the substantial priority claimants would only share, on a pro rata basis, approximately $229,912 after payment of all administrative expenses.

The United States filed a proof of claim in this case in the amount of $1,384,722.50, which claim is secured by federal tax liens filed against the Brooklyn property. The United States took a very active role in this adversary proceeding, engaging in significant discovery and taking substantial deposition testimony of the various parties in order to discover the true nature of the Maghazeh Trust. The United States sought and was granted a continuance to take and complete discovery, and thereafter, filed opposition to the Trustee's motion and cross-moved for summary judgment. The United States argued that the Maghazeh Trust is the alter ego of the Debtor, and that 1) the mortgages were extinguished by merger and/or the mortgages were effectively released to the Debtor, or 2) that the underlying debt had been satisfied, thereby releasing the mortgages purchased by the Maghazeh Trust.

As a result of the discovery taken by the United States, it was revealed that the mortgages claimed by the Maghazeh Trust were obtained by it in a transaction dated February 25, 1997, in which the Danmar Management Limited Partnership assigned them to the Maghazeh Family Trust in exchange for consideration sup-

plied solely by the Debtor. At the time of the transfer, the Debtor was in a prior bankruptcy. He later admitted under oath that he "wanted the mortgages to be assigned to [his] kids so [he] could keep the houses away from [his] creditors." U.S. Rule 7056–1 Statement. He also concealed the source of the consideration from this Court and the trustee in his prior bankruptcy case. *Id.* The Maghazeh Trust opposed the United States' cross-motion and the Trustee filed a reply in which he continued to assert that the mortgages purchased by the Maghazeh Trust should be upheld.

On May 6, 2004, this Court entered a decision in favor of the United States, holding that the Maghazeh Trust was the alter ego of the Debtor at the time the mortgages were purchased, and finding that the mortgages claimed by the Maghazeh Trust were assets of this Debtor's estate. As a result of the discovery of this asset, it is likely that there are more than sufficient funds to pay all creditors of the Debtor in full, inclusive of interest.

The United States has brought the instant motion, seeking leave to file an application pursuant to 11 U.S.C. § 503(a) of the Bankruptcy Code for payment of its expenses under 11 U.S.C. § 503(b). In the alternative, the United States seeks reimbursement of its attorneys fees and expenses against the Debtor, collectible as damages incurred by the United States as a result of the Debtor's fraud, or as sanctions for bad faith litigation. The Trustee opposes the United States' motion, claiming that the United States took no action in this case until the Trustee sold the Debtor's real properties for sums nearly double the values listed in the Debtor's schedules.

It is undisputed that if not for the actions of the United States, which took extensive discovery regarding the Maghazeh Trust and the circumstances surrounding its alleged purchase of the mortgages in question, these assets would not have been uncovered for the benefit of the creditors of this estate. Only the efforts of the United States assisted the Court in finding that a fraud on the Court had been committed in the Debtor's prior bankruptcy case when the Court approved the purchase of these mortgages by the Maghazeh Trust. Compensating the United States for legal fees and costs incurred in connection with its efforts to uncover the asset is appropriate and warranted.

## DISCUSSION

■ 11 U.S.C. § 503(b) provides, in pertinent part:

(b) After notice and a hearing, there shall be allowed administration expenses, other than claims allowed under section 502(f) of this title, including–

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;

\*      \*      \*      \*      \*      \*

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by–

\*      \*      \*      \*      \*      \*

(B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;

11 U.S.C. Sec. 503(b).

Subsection (4) of this section permits reasonable compensation to attorneys or accountants of entities whose expenses are allowable under section 503(b)(3)(B) of the Bankruptcy Code.

The list enumerated in 11 U.S.C. § 503(b) is not exclusive. Several courts interpreting this section of the Code note that the use of the word "including" at the beginning indicates that the list of expenses allowed provides examples and is not meant to be exhaustive. *In re Pappas,* 277 B.R. 171 (Bankr.E.D.N.Y.2002). In the *Pappas* decision, Judge Cyganowski notes that expenses not listed in this statute can receive administrative expense status as a nonlisted "actual, necessary" expense of preserving the estate under section 503(b)(1)(A) or as a nonlisted administrative expense under section 503(b). *Id.* (citing *In re Younger,* 165 B.R. 965, 968 (S.D.Ga.), *aff'd,* 51 F.3d 1051 (11th Cir.1995)). The Court finds that the fees and expenses incurred by the United States fit within the description of nonlisted actual and necessary expenses of preserving the estate because absent the actions of the United States, the Trustee's motion would have been unopposed and the Debtor's creditors would not have received the benefit of a valuable, hidden asset.

The United States is also entitled to compensation for fees and expenses incurred pursuant to 11 U.S.C. §§ 503(b)(3)(B) and 503(b)(4). This Court is aware that some courts have refused to compensate creditors for services performed which are a benefit to the estate because prior court authorization was not obtained pursuant to the statutory requirements. Courts prohibiting compensation for unauthorized services often do so to ensure that costs are controlled and estate assets are not wasted. *In re Johnson,* 72 B.R. 115 (Bankr.E.D.N.C.1987). Other courts require parties to seek prior approval to bring a complaint in order to provide the trustee with a chance to indicate whether he or she is willing to pursue the action in question. *Id.* In this case, the United States did not commence an action in this case, and its participation resulted from the adversary proceeding commenced by the Trustee to determine the rights of the parties to the proceeds generated by the sale of the two properties owned by the Debtor. The United States was put into the position of having to respond to the Trustee's motion, and only the United States undertook the necessary discovery during the pendency of this adversary proceeding that uncovered and revealed the hidden asset for the benefit of the Debtor's creditors. Therefore, requiring the United States to have obtained prior court authorization in this case, when no challenges to the Maghazeh Trust had been previously brought by any party, would have been unfair and unreasonable.

Courts finding that compensation may be awarded in the absence of prior court approval generally do so where the creditor's actions have resulted in the recovery of an asset for the benefit of the estate and its creditors. For example, in *In re Rumpza,* 54 B.R. 107 (Bankr.S.D.1985), creditors of the debtor advised the Chapter 7 trustee of various irregularities in the petition, including the failure to list a lake cabin owned by the debtor. The creditor examined the debtor and the debtor admitted that he failed to list the cabin as an asset. The creditor filed a complaint objecting to discharge of the debtor, which was ultimately unsuccessful. However, the discovery by the creditor of the cabin prompted the debtor to amend his schedules, resulting in the addition of an asset of the estate. The bankruptcy court found that the amendments to the schedules were the direct result of the creditor's investigations. Therefore, the creditor's actions resulted in a demonstrable benefit to the estate and payment of his fees and expenses was warranted under section 503(b)(3)(B). The court further found that although the creditor did not obtain prior

court approval to be retained, efforts like his should be encouraged and recognized. *Id.* at 109.

Similarly, in *In re Antar,* 122 B.R. 788 (Bankr.S.D.Fla.1990), the bankruptcy court held that "creditors who are willing to undertake the burden, financially and otherwise, of investigating the financial affairs of the debtor for the purposes of uncovering undisclosed assets as well as prosecuting causes of action which maintain the integrity of the Court" are to be rewarded in appropriate circumstances, or else there could be a chilling effect on creditor participation within a proceeding. Likewise, the court in *In re George,* 23 B.R. 686 (Bankr.S.D.Fla.1982) held that a creditor which resists claims, opposes claimed exemptions, recovers a fraudulent transfer or performs other similar services benefiting the estate may obtain compensation under section 503(b)(3)(B) if the circumstances warrant.

This is exactly what counsel to the United States did in this case. They undertook the burden of inquiring into the facts which resulted in the Court's recognizing the deceit of the Debtor and the beneficiaries of the Maghazeh Trust. Based on the posture of this adversary proceeding and the motion for summary judgment brought by the Trustee, the United States had no choice but to conduct the necessary discovery so that it could come before this Court and show that the transfers of the mortgages to the Maghazeh Trust were improper and tainted with fraud. The Court finds that this situation fits within the law which permits payment for the reasonable United States' fees and expenses under 11 U.S.C. § 503(b)(3)(B).

### CONCLUSION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. The list of expenses enumerated in 11 U.S.C. § 503(b) is not exclusive.

3. Pursuant to 11 U.S.C. § § 503(b), (b)(3) and (b)(4), the United States is entitled to the actual, necessary legal fees and expenses incurred in connection with the discovery undertaken in this adversary proceeding, as well as the legal fees and expenses incurred in preparing its opposition to the Trustee's motion for summary judgment and its own cross-motion for summary judgment. The allowable amount of expenses is $11,149.36. The reasonable compensation for professional services rendered by its attorneys is $71,663.25.