**In re INTEGRITY SUPPLY,
INC. Debtor.**

**No. 97–55720.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Sept. 21, 2009.

Integrity Supply Inc., Pro se.

Ezra N. Goldman, Bloomfield Hills, MI, for Chapter 7 Trustee.

### MEMORANDUM OPINION AND ORDER ON APPLICATION FOR COMPENSATION

C. KATHRYN PRESTON, Bankruptcy Judge.

This cause came on for hearing on March 17, 2009 to consider the Application

for Compensation for Services (Doc. 106) filed by United States Locator Service ("USLS"), the Response (Doc. 107) filed by the Chapter 7 Trustee ("Trustee"), and the Supplemental Brief in Support (Doc. 113). Present at the hearing were Ezra N. Goldman representing USLS and Arnold S. White as Trustee. After the parties presented legal argument, the Court took the matter under advisement and allowed the parties an opportunity to file briefs in support of their positions.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the General Order of Reference entered in this District. This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A) and(B).

USLS seeks an allowance of an administrative claim under 11 U.S.C. § 503(b)(2) and § 330(a) [1] in the amount of $9, 882.28 which consists of $8,833.28 for services provided and $1,025.00 for costs. Trustee did not file a formal objection, but instead filed a response whereby he seeks guidance from the Court as to whether USLS' request for an administrative claim should be allowed.

## I. *Background*

The facts pertinent to resolution of this matter are without dispute and may be summarized as follows: A Petition for Relief under Chapter 7 of the Bankruptcy Code was filed against the Debtor, Integrity Supply, Inc., on June 23, 1997. The Court entered an Order for Relief on August 18, 1997 (Doc. 15), and Arnold S. White was duly appointed Trustee. The Trustee proceeded with his administration of the bankruptcy estate and filed a Special Trustee's Report of No Distribution (Doc. 71) on July 31, 2000, indicating there were no assets for him to administer for the bankruptcy estate. Subsequently, an Order Approving Trustee's Final Report, Discharging Trustee and Closing Case (Doc. 72) was entered August 4, 2000.

USLS is in the business of locating and returning to rightful owners unclaimed or missing funds held by various sources, such as funds that escheat to the State. USLS' services generally consist of informing a person that unclaimed or missing funds exist to which he or she is entitled, and then, on behalf of that person, USLS recovers the funds from the entity holding them. USLS usually charges a contingent fee for its services whereby it receives 33% of the funds recovered. In August 2006, after the case had closed, Martin Robbins, the Chief Financial Officer of USLS, called the Trustee by telephone to inform him that funds existed for the bankruptcy estate. Mr. Robbins offered to recover the funds on behalf of the bankruptcy estate for a contingent fee; however, the Trustee declined Mr. Robbins' offer to engage USLS' services to recover the funds. Even though Mr. Robbins never disclosed where the funds were located, the Trustee politely thanked Mr. Robbins for the information and then ended the telephone conversation. According to the Trustee, the telephone conversation lasted less than two minutes.

After speaking with Mr. Robbins, the Trustee investigated unclaimed funds held by the State of Ohio, to discover that the State held approximately $92,000 of unclaimed funds to which the Debtor was entitled. Consequently, on September 6, 2006, the Trustee filed a Motion to Reopen the bankruptcy case to administer the newly discovered assets, which Motion was granted by order of Court on November

---

1. In the Supplemental Brief in Support (Doc. 113) USLS also argues that it is entitled to compensation on the basis of quantum meruit. Each of USLS' arguments will be addressed separately in this opinion.

17, 2006. Thereafter, Arnold S. White was reappointed as the Chapter 7 Trustee to administer the bankruptcy estate, and successfully obtained possession of the funds.

Subsequently, USLS filed an application seeking compensation for its services pursuant to 11 U.S.C. § 503(b)(2) and § 330(a). USLS asserts that the Trustee was completely unaware of the $92,000 held by the State of Ohio and the only reason the Trustee discovered the funds was due to the telephone call from Mr. Robbins. In the alternative, USLS also argues that it is entitled to compensation based on the equitable theory of quantum meruit because USLS conferred a benefit upon the bankruptcy estate and allowing the bankruptcy estate to retain that benefit without making payment therefor would be unjust and inequitable.

The Trustee does not dispute that without the tip from Mr. Robbins he would not have investigated and recovered the funds held by the State of Ohio; however, the Trustee argues that he is not certain USLS is entitled to compensation because it never entered into an agreement or employment contract with the Trustee.

## II. Conclusions of Law

### A. Administrative Claim

11 U.S.C. § 503 describes allowable administrative claims under the Bankruptcy Code. Before the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), 11 U.S.C. § 503(b) stated in pertinent part:[2]

(b) After notice and a hearing, there shall be allowed administrative expenses, ... including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, in-

cluding wages, salaries, or commissions for services rendered after the commencement of the case;

. . .

(2) compensation and reimbursement awarded under section 330(a) of this title[.]

11 U.S.C. § 503 (1997). The word "including" in § 503(b) is not a word of limitation. 11 U.S.C. § 102(3). It is well established the subsections of 503(b) are examples of what may qualify as administrative expenses, but do not limit the Court in deciding what may be allowed as an administrative expense under § 503(b). *Younger v. United States (In re Younger)*, 165 B.R. 965, 968 (S.D.Ga.1994) ("Although certain types of administrative expenses are listed in the statute, the designations contained in section 503(b) are not exhaustive since use of the word 'including' in the statute is not limiting."); *In re N.P. Mining Co.*, 963 F.2d 1449, 1452 (11th Cir.1992) ("It is clear from the face of the statute, however, that expenses not explicitly listed in section 503(b) can receive administrative-expense status in one of two ways, either as a nonlisted 'actual, necessary' expense of preserving the estate under 503(b)(1)(A) or as a nonlisted administrative expense under 503(b) in general."); 4 L. King, *Collier on Bankruptcy* P 503.05[1], at 503–23 (15th rev. ed.2009) (explaining the term *including* is not a limitation and "[t]he court may determine that additional types of claims are expenses that should be accorded administrative priority in a particular case."). Thus, administrative claims may be determined on a case-by-case basis. *In re Merry–Go–Round Enters., Inc.*, 180 F.3d 149, 156 (4th Cir.1999).

2. Most of the provisions of BAPCPA became effective October 17, 2005; this case was filed in 1997 and therefore, is not governed by the amendments to the Bankruptcy Code pursuant to BAPCPA.

### 1. Section 503(b)(2) Compensation of Officers

Section 503(b)(2) provides, in pertinent part, that

(b) After notice and a hearing, there shall be allowed administrative expenses, . . . including—

. . .

(2) compensation and reimbursement awarded under section 330(a) of this title[.]

11 U.S.C. § 503 (1997). As it existed in 1997, Section 330(a) provided that the court may award reasonable compensation and reimbursement of expenses to "a professional person *employed under section 327* . . . ." 11 U.S.C. § 330(a)(1) (1997) (emphasis added). Thus, § 330(a) requires that the professional person must be "employed under section 327" in order to receive compensation under § 330(a). *See Lamie v. United States Trustee*, 540 U.S. 526, 538–39, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (holding that " § 330(a)(1) does not authorize compensation awards to debtors' attorneys from estate funds, unless they are employed as authorized by § 327[,]" and "[i]f the attorney is to be paid from estate funds under § 330(a)(1) in a chapter 7 case, he must be employed by the trustee and approved by the court.")

Section 327(a), which was unchanged by BAPCPA, states as follows:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

The procedure for obtaining approval of employment of a professional is governed by Fed. R. Bankr.P.2014 [3] and requires, among other things, that the trustee or committee file an application requesting Court approval of the employment. Rule 2014 also requires the application set forth certain facts regarding the need for and the terms of the employment and establish that the applicant is disinterested. "The purpose of the rule requiring prior court authorization of a professional's employment is to prevent volunteerism and to assist the court in controlling administrative expenses." *In re McDaniels*, 86 B.R. 128, 129 (Bankr.S.D.Ohio 1988) (citation omitted).

A professional failing to comply with the requirements of the Code or Bankruptcy Rules may forfeit the right to compensation. . . . The services for which compen-

**3.** Rule 2014(a) provides:

An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327 . . . of the Code shall be made only on application of the trustee or committee. The application shall be filed and . . . a copy of the application shall be transmitted by the applicant to the United States trustee. The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

sation is requested should be performed pursuant to appropriate authority under the Code and in accordance with an order of the court. Otherwise, the person rendering such services may be considered an officious intermeddler or a gratuitous volunteer.

3 L. King, *Collier on Bankruptcy* P 327.03[2][b], at 327–18 (15th rev. ed.2009). In this case, the Trustee never filed an application seeking to employ USLS pursuant to 11 U.S.C. § 327, Fed. R. Bankr.P. 2014, and Local Bankruptcy Rule 2014–1. Thus, the Court has never approved USLS' retention as a professional. Accordingly, USLS is not entitled to receive an administrative expense claim for compensation pursuant to § 503(b)(2) and § 330(a) as requested in its Application for Compensation.

■■■■ In some instances, however, a court may grant an application for employment nunc pro tunc. "[B]ankruptcy courts, possessing equitable powers, have the inherent power to issue an order *nunc pro tunc* ... under extraordinary circumstances and upon a proper showing." *In re McDaniels*, 86 B.R. 128, 131 (Bankr. S.D.Ohio 1988) (citation omitted).

To establish the basis for a *nunc pro tunc* order of employment, an applicant must demonstrate each of the following requirements and, all evidentiary matters must be established by clear and convincing evidence:

1. The application must be one which would have been approved originally by the Court, measured by the requirements of 11 U.S.C. § 327 and Bankruptcy Rule 2014 at or before the time the services were actually commenced;

2. Evidence must appear in the record of the case which demonstrates that the Court and other interested parties had actual knowledge of the legal services being rendered by the applicant;

3. An application seeking an order *nunc pro tunc* must be filed as soon as the matter is brought to the attention of the applicant;

4. The party for whom the work was performed approves the entry of the *nunc pro tunc* order;

5. The applicant has provided notice of the application for the *nunc pro tunc* order to creditors and parties in interest and has provided an opportunity for filing objections;

6. No creditor or party in interest offers reasonable objection to the entry of the *nunc pro tunc* order;

7. If the applicant is also seeking compensation at this point, the applicant must have provided notice of the application for fees to any parties in interest, thus providing an opportunity for objections as provided in 11 U.S.C. § 330;

8. A sustainable objection must not be filed to the applicants [sic] request for attorney fees;

9. No actual or potential prejudice will inure to the estate or other parties in interest;

10. The applicant's failure to seek pre-employment approval is satisfactorily explained;

11. The applicant exhibits no pattern of inattention or negligence in seeking judicial approval of employment of professionals, measured in some degree by the applicants [sic] experience in this field of law.

*In re McDaniels*, 86 B.R. 128, 133–34 (Bankr.S.D.Ohio 1988) (citation omitted). Neither the Trustee nor USLS has filed an application seeking a nunc pro tunc order of employment. The Court, therefore, has nothing to measure against the require-

ments of 11 U.S.C. § 327 and Rule 2014.[4] Accordingly, USLS' request for compensation pursuant to 11 U.S.C. § 503(b)(2) and § 330(a) is hereby denied.

USLS argues in the alternative that it does not qualify as a professional, and thus Court approval of its employment is not necessary.[5] Accordingly, the Court must consider whether USLS' request for compensation may qualify as an allowable administrative expense pursuant to another provision under 11 U.S.C. § 503(b).

### 2. Section 503(b)(1)(A) Preserving the Estate

■ Upon reviewing the various types of allowable administrative expenses enumerated under 11 U.S.C. § 503(b), the only one that might otherwise apply to USLS' request for compensation is § 503(b)(1)(A) which includes "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case[.]" For a cost to be actual and necessary to a bankruptcy estate and qualify as an administrative expense under section 503(b)(1)(A), the debt must (1) arise from a post-petition transaction with the bankruptcy estate and (2) confer a direct and significant benefit to the estate. *Pension Benefit Guar. Corp. v. Sunarhauserman, Inc. (In re Sunarhauserman, Inc.)*, 126 F.3d 811, 816 (6th Cir.1997). This is known as the "benefit to the estate" test. *See Sunarhauserman*, 126 F.3d at 816. The second ele-

ment of the test is clearly satisfied in this case. This bankruptcy case closed without any distributions made to unsecured creditors almost six years before USLS contacted the Trustee. The Trustee admits that the recovery of the unclaimed funds was only possible because of the contact from USLS. The Trustee does not dispute the fact that he never would have discovered the assets unless USLS alerted him to their existence. Therefore, USLS' efforts indisputably provided a substantial and direct benefit to the estate.

■ The first element of the test, however, is not so easily satisfied. The issue to be determined is whether the administrative expense asserted by USLS arose from a transaction with the bankruptcy estate. The term transaction is defined as follows:

1. The act or an instance of conducting business or other dealings; especially, the formation, performance, or discharge of a contract. 2. Something performed or carried out; a business agreement or exchange. 3. Any activity involving two or more persons. 4. An agreement that is intended by the parties to prevent or end a dispute and in which they make reciprocal concessions.

*Black's Law Dictionary* (8th ed.2004). According to the Trustee, the telephone conversation with USLS lasted no more than two minutes, and during that time, the Trustee specifically declined to engage

4. The Court notes that an application to employ USLS nunc pro tunc would likely be contested if it was filed by USLS given the fact that the Trustee clearly indicated that he did not wish to engage USLS' services when it telephoned the Trustee regarding the unclaimed funds. Furthermore, Rule 2014 requires the Trustee file such an application in a chapter 7 proceeding, so again, the Court notes the unlikelihood that employment would happen under these circumstances.

5. The Court reserves ruling on the issue of whether USLS qualifies as a professional as contemplated by 11 U.S.C. §§ 327 and 330 because the record is insufficient to enable the Court to do so and the determination of that issue is not necessary for the Court to reach its conclusion.

USLS' services to locate the unclaimed funds. Further, the Trustee never executed any type of engagement letter, employment agreement, or any other written document thereby agreeing to employ USLS on behalf of the bankruptcy estate. Given the fact that the Trustee verbally declined to engage USLS to aid him in locating the unclaimed funds and there is no written document evidencing any type of agreement or understanding between the Trustee and USLS regarding its employment leads this Court to conclude that the administrative expense claim USLS now seeks did not arise from a transaction with the bankruptcy estate. Therefore, USLS has not met the requirements of § 503(b)(1)(A), and accordingly, the Court finds that USLS' request for fees and costs is not an allowable administrative expense pursuant to § 503(b)(1)(A).

### 3. Quantum Meruit

■ USLS also argues that its request for fees and costs should be allowed as an administrative expense based on the equitable doctrine of quantum meruit. However, USLS is not entitled to an administrative claim based on the theory of quantum meruit because it cannot satisfy all of the necessary elements of that doctrine.

> The equitable doctrine of *quantum meruit* is based on an implied promise on the part of the defendant to pay the plaintiff *as much as he* reasonably *deserved* to have for his labor. In Ohio, the essential elements of recovery under *quantum meruit* are:
> (1) Valuable services were rendered or materials furnished,
> (2) for the person sought to be charged,
> (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him, (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff, in performing such services was expecting to be paid by the person sought to be charged.

*Campanella v. Commerce Exch. Bank,* 137 F.3d 885, 892 (6th Cir.1998) (citations omitted).

■ Undeniably, USLS expended its efforts and labor to discover the unclaimed assets held by the State of Ohio, investigate who was entitled to receive them, and notify that person, namely the Trustee. However, any efforts and labor expended by USLS in the first instance were not performed at the direction, request or even with knowledge of the Trustee, but instead were simply its ordinary and customary efforts USLS performs when trying to discover who is the rightful owner of certain unclaimed funds. The Trustee stated that the initial contact he had with a representative of USLS lasted less than two minutes, and the Trustee expressly declined to engage USLS' services for recovering the unclaimed funds. Under these circumstances, the services rendered by USLS were not performed for the Trustee, but instead were performed for its own business development so that it could solicit its services to the Trustee by offering to recover the assets for him. Additionally, there was no implied promise made on behalf of the Trustee to pay USLS for its labor because the Trustee specifically declined to engage USLS' services. Accordingly, the elements necessary to recover compensation based on the doctrine of quantum meruit are not present here. Therefore, USLS' request for an administrative claim under that theory is denied.

### 4. Nonlisted administrative expense under § 503(b)

■ Finally, this Court must examine whether the circumstances in this case warrant the allowance of compensation to

USLS as a nonlisted administrative expense under § 503(b). As stated earlier, "[e]xpenses not explicitly listed in the statute can receive administrative expense status in one of two ways: as a nonlisted 'actual, necessary' expense of preserving the estate under section 503(b)(1)(A) or as a nonlisted administrative expense under section 503(b) in general." *Younger*, 165 B.R. at 968 (citations omitted); *see also Pergament v. Maghazeh Family Trust (In re Maghazeh)*, 315 B.R. 650, 654 (Bankr. E.D.N.Y.2004) (finding that "the fees and expenses incurred by the United States fit within the description of nonlisted actual and necessary expenses of preserving the estate because absent the actions of the United States ... the Debtor's creditors would not have received the benefit of a valuable, hidden asset.")

> While the Court acknowledges that a creditor's request for administrative expense status may be granted under Section 503(b) where the services provided by a creditor bestowed a substantial benefit to the estate and assisted in the recovery of assets, to the extent that a creditor is claiming that it 'assisted the trustee,' it is necessary that the trustee agree that the creditor's efforts actually 'assisted' the trustee, in fact. [T]hat 'but for' the assistance of the creditor, the trustee's efforts would not have yielded benefit to the estate.

*In re Pappas*, 277 B.R. 171, 176 (Bankr. E.D.N.Y.2002) (citation omitted). In this case, the Trustee does not dispute that without the tip from USLS, he would not have looked for the unclaimed funds. Accordingly, the Court recognizes that sufficient justification exists in this case to allow USLS to claim an administrative expense for its services because: 1) the bankruptcy estate received a substantial benefit in the amount of approximately $92,000 that it would not have otherwise received; 2) the Trustee clearly would not have discovered the unclaimed assets on his own given the fact that the case had been fully administered as a no asset case by the Trustee and closed for nearly six years; and 3) the public interest is best served by encouraging entities such as USLS to alert a Trustee of the existence of assets that will benefit the bankruptcy estate, especially when the record clearly indicates the Trustee has completed his administration and abandoned any further efforts to administer the bankruptcy estate.[6] Only USLS undertook the necessary investigation into the unclaimed funds revealing an undiscovered asset for the benefit of this bankruptcy estate which will ultimately result in creditors receiving some distribution as opposed to none. Therefore, USLS' request for compensation is hereby allowed as an administrative expense in general under § 503(b).

### III. *Conclusion*

In light of the foregoing, the Court grants in part and denies in part the Application for Compensation filed by United States Locator Service. Therefore, it is

**ORDERED AND ADJUDGED** that the Application for Compensation for Services (Doc. 106) filed by United States Locator Service is hereby denied with respect to United States Locator Service's requests for administrative expense pursuant to 11 U.S.C. § 503(b)(2) and quantum meruit,

---

6. Nothing in this opinion should be construed to encourage asset locating companies, such as USLS, to interfere in the normal administration of a chapter 7 bankruptcy proceeding and rush to discover unclaimed funds in the hopes of receiving compensation from the bankruptcy estate without first obtaining the cooperation and agreement of the trustee to do so. As such, the decision of this Court to allow an administrative expense for USLS should be strictly limited to the facts of this particular case.

and is granted in part as a nonlisted administrative expense. It is further,

**ORDERED AND ADJUDGED** that compensation for United States Locator Service in the amount of $9,882.28 is allowed as a nonlisted administrative expense, in general, pursuant to 11 U.S.C. § 503(b).

**IT IS SO ORDERED.**